STEPHEN COLLAR v. HAMBLIN D. COLLAR.

[See 75 Mich. 414.]

*Deed—Parol trust—Statute of frauds—Evidence—Money had and received.*

1. An action for money had and received will lie against a grantee for money received on the sale of land conveyed to him under a parol trust to make such sale, and divide the proceeds among the grantors; citing *Collar v. Collar,* 75 Mich. 414.

2. Where, in such a case, it appears that the trust is evidenced and defined by a written agreement, parol testimony regarding its terms should be excluded.

3. A parol agreement for the purchase and disposition of land, while executory, is void under the statute of frauds.

Error to Ingham. (Peck, J.) Argued April 16, 1891. Decided July 28, 1891.

*Assumpsit.* Defendant brings error. Reversed. The facts are stated in the opinion, and in a former opinion, reported in 75 Mich. 414.

*Q. A. Smith (R. A. Montgomery,* of counsel), for appellant.

*Parkinson & Day,* for plaintiff.

CHAMPLIN, C. J.   On a former trial of this case the defendant prevailed, the trial court holding that upon · the showing then made there could be no recovery upon any theory, either as for money had and received, or upon an account stated, or upon the special count, unless the contract was proven.   Upon a writ of error to this Court the judgment was reversed, and a new trial ordered. 75 Mich. 414.

Another trial has been had, and the plaintiff has recovered a judgment, and we are asked to review the proceedings which led to that result.   Thirty-one errors have been assigned, only a few of which demand partic- ular attention in an opinion, although all have been carefully considered.   The facts, as developed by the testi- mony upon this trial, are but slightly variant from those which appeared upon the other trial upon the main issues.

At the conclusion of the testimony, the court stated to the counsel the theories upon which he submitted the case to the jury as follows:

"I think this case should go to the jury upon two theories, both of which there is some tendency, in my judgment, in the proof to support the plaintiff's case, as well as proof having an opposite tendency, and what the truth is about it the jury will determine from the evi- dence; and the one theory is upon the count for the money had and received.   Now, to sustain that,—I make this statement that you may understand generally what the views of the court are previous to the argument,—to sustain the case upon the theory for money had and received, it must appear that the parties in their trans- actions understood and treated the business of procur-

ing these titles by Hamblin as embracing within it an interest for Stephen; that must have been the understanding all round. Now, whether or no such a condition of things as that existed will be left to the jury to determine under the evidence.

"The plaintiff also claims that an agreement was made on the 18th of May, 1886, by which the defendant, in settlement of the plaintiff's claimed interest in the lands, agreed to pay him $225. Now, to make that a valid agreement, if it is proved to the satisfaction of the jury, it must appear that it was made upon a lawful consideration or a good consideration in law. As applied to this case, it is contended on behalf of the plaintiff that there was consideration for making that agreement in this: That Stephen Collar claimed to have an interest in the lands, and went there to settle with Hamblin for that interest. It is not essential, as has been stated on all hands in the argument, that he should have had a legal interest; if he had such an apparent or claimed interest in the lands as, under the circumstances surrounding the parties, was esteemed by them a thing which it was worth while for Hamblin to settle or consider of value, then, I think, it would be a good consideration. Whether that was the case or not, the jury must determine from the evidence. It is true that, so far as anything appears here, the sheriff's deed had alienated Stephen's interest in the land as a matter of law, and from what appears before me I think that is true. The parties may not have considered that that was so, and if Stephen claimed an interest, notwithstanding that, in the property, and Hamblin yielded to that claim, and, for the purpose of settling it and avoiding a controversy upon it, agreed to pay him $225 in settlement of that claim, I think that would be a good consideration for the agreement.

"While the sheriff's deed would, as a matter of law, have alienated Stephen's interest in the land, there appears to have been in Sylvester at his death not only the interest which was conveyed by virtue of the sheriff's deed, but also such interest, if any, as could be conveyed and was conveyed by Stephen and his wife by quitclaim of the premises. If the parties regarded the interest so acquired by both these conveyances,—although the sheriff's deed may have conveyed Stephen's interest entirely, and I think it did,—if the parties regarded the interest owned by Sylvester at his death and by his heirs

afterwards as embracing some equitable interest in Stephen, represented by the quitclaim from Stephen and his wife, or if they regarded the Secor deed, Secor being the execution creditor, as having been procured in the interest of Stephen, those facts and circumstances should be considered with a view of determining whether or not Stephen did have any equitable interest in the fund."

The defendant's counsel, in the course of their cross-examination of Stephen Collar, attempted to show that the conveyance made by Stephen Collar and his wife to Jacob Thorne, on the 28th day of December, 1874, was fraudulent as to his creditors. The court, however, refused to permit the attorneys for the defendant to go into such inquiry. We do not think that the court erred in excluding this testimony. The creditors of Stephen Collar are not before the court or making any complaint of the conveyance by Stephen Collar to Jacob Thorne, and we do not think that the inquiry is material to the issue before the court.

It appears in the case that Joseph S. Secor, a creditor of Stephen Collar, proceeded by attachment against him, and levied upon his interest in the lands in question, and obtained a judgment against him in the state of New York, and levied upon and sold his interest in said lands by public auction, and by which sale the judgment was fully satisfied. The land was bid off at the sheriff's sale by one Isaac Secor, who in due time received the sheriff's deed therefor. It appears, also, that the proceedings in the attachment suit, so far as service upon the defendant, Stephen Collar, was concerned, was a substituted service, no personal service upon the defendant having been acquired in the state of New York; and it was claimed on the part of the defendant in this suit that the sheriff's deed conveyed to Isaac Secor all the interest which the plaintiff, Stephen Collar, had in such land. The deed of the sheriff bears date the 29th day of

December, 1870, being prior in time to the deed of Stephen Collar to Jacob Thorne; and therefore the defendant in this suit claims that, at the time of the execution of the deed to Thorne, Stephen Collar had no interest whatever to convey, and conveyed nothing whatever by such deed. It appears, further, that Sylvester Collar acquired the interest of Isaac Secor under the sheriff's deed by purchase and conveyance from him to Sylvester, dated the 25th day of April, 1887. He also obtained a deed from Thorne and wife, dated December 6, 1876. Stephen Collar contends that the court in the state of New York obtained no jurisdiction in the suit, and that the sheriff's deed is invalid, and did not extinguish his title to the land.

The circuit judge charged the jury that he was of opinion that the sheriff's deed did extinguish the title of Stephen Collar to the land, but further instructed the jury that, if he insisted that he had a claim upon the land after the sheriff's deed, even after he had conveyed to Thorne and he to Sylvester Collar, such claim would constitute a good consideration for the promise of Hamblin D. Collar to pay him the sum of $225 for such interest.

We held, when the case was here before, that where lands were conveyed under a parol trust to sell and convert into money and divide the proceeds, and the trust had been so far executed by the trustee as to sell the land and receive the money, and such trust had been recognized by him, an action for money had and received would lie to recover such money by the person entitled thereto; and in *Bitely v. Bitely*, 85 Mich. 227, we held that parol evidence was admissibe to prove that land was conveyed to sell and divide the proceeds among the heirs; and in *White v. Cleaver*, 75 Mich. 17, we held

that such a trust was not within the provisions of the statute of frauds.

Such testimony was admitted upon the trial of this case; but upon this trial it appeared upon the examination of the plaintiff that there was a writing having reference to four of the conveyances by the heirs to Sylvester Collar, which the plaintiff signed, and that it was sent by Henry to the heirs in Kent county, and that this writing was for the purpose of fixing up and to sell the place, so as to divide the money with the four heirs, namely, Henry, Cameron, Mary, and himself. When this fact appeared, such writing was the best evidence. It defined the trust, and all parol evidence respecting the trust upon which Sylvester obtained the deeds from such heirs should have been excluded. There was no sufficient showing of the loss of such writing as to permit the introduction of parol evidence of its contents. Such parol evidence, when introduced, was objected to, and, when it appeared later that there existed such writing, such objections became effective.

It appears that such writing did not include or provide for all the heirs, but it did include the plaintiff, and measured the rights of those who were parties to it and Sylvester Collar. The plaintiff also testified that at his talk with the defendant on May 18, 1886, he represented these same four heirs, and wanted to settle only for those four interests. It is very important that it should appear what agreement Sylvester had with those four heirs, and the writing is the best evidence of that.

The parol testimony tended to show that the trust which Sylvester assumed was not a trust in land, but a trust arising out of the disposition of land conveyed to him for a specific purpose. It was a trust arising out of the confidence reposed in him by the heirs in conveying their interest to him without any other consideration to

them than that he should dispose of the land, and divide the proceeds *pro rata* among them. The agreement was executory, and contemplated action on the part of Sylvester. He was to acquire the interests of all the heirs, and sell and convert the real estate into money, and pay over to each his *pro rata* share. So far as the agreement relating to the purchase and disposition of real estate rested in parol, it was void under the statute of frauds. *Wright v. King,* Har. Ch. 12; *Bernard v. Bougard,* Id. 130; *Trask v. Green,* 9 Mich. 358; *Newton v. Sly,* 15 Id. 391; *Cobb v. Cook,* 49 Id. 11; *Pulford v. Morton,* 62 Id. 25; *Shafter v. Huntington,* 52 Id. 310. It was only after Sylvester had proceeded in the execution of the parol agreement, and had obtained title of all the heirs, and converted the real estate into money, that the trust would arise, founded upon equity and good conscience, to pay over the proceeds; and before such trust could be enforced at law, some new promise must have been made, and his duty to pay over must have been affirmatively recognized before an action could be maintained. *Calder v. Moran,* 49 Mich. 17.

But what becomes of the remedy of the heirs so deeding if the grantee dies before performance on his part of those provisions which are void by the statute of frauds, and before the property is converted into personalty, so that a trust can attach? At such time it is not such a trust as equity will lay hold of and appoint a new trustee to carry out the parol trusts, which are void by the statute of frauds. The most that can be said in such a case is that the parties have voluntarily conveyed away their interest in the real estate, and placed it beyond recall. They would have been in the same predicament as if Sylvester Collar, after having obtained absolute deeds of conveyance from all the heirs, had refused to sell or

convey the land, or further perform the parol agreement. The heirs could not have compelled a specific performance, because the parol agreement is void under the statute of frauds. Sylvester Collar died before the parol trust attached, and the rights of the heirs to have a performance died with him.

It was said by Mr. Justice CAMPBELL, in *Bulen v. Granger*, 56 Mich. 208:

"As our statutes have abolished the old doctrine of resulting trusts, a person who deliberately conveys land to a wife or other relative stands in no better condition as to enforcing such a trust than any one else."

The plaintiff could not have maintained this action against the heirs of Sylvester Collar, even though they had sold the 55 acres for $3,000 and received the money. The land was incumbered by no trust when it descended to them. It does not become subject to any trust in the hands of the purchaser from them; nor does such purchaser owe to the heirs any duty arising out of the original parol agreement between Sylvester and the heirs. But if there was an express trust evidenced in writing, other considerations obtain, and what the rights and remedies of the parties would be in such a case depend entirely upon the writing; and until that is produced or established with sufficient certainty, it is impossible to determine whether the present action could be maintained or not.

When the case was here before, the opinion was based upon the statement that—

"In 1880, Sylvester Collar died, not having executed the trust or conveyed said lands, and afterwards the defendant, Hamblin D. Collar, obtained a conveyance of said lands from the heirs of Sylvester Collar, deceased, which included the interest of plaintiff, which had been conveyed to Thorne, and afterwards to Sylvester, *for the*

*same purpose.* * * * It was also proposed to be shown that the defendant obtained the whole title to this land from the heirs of Sylvester, and that he knew his brother had taken the title to the land for the purpose of thus distributing the proceeds, and that although *he had recognized the rights* of all the other heirs, and paid them off on the basis of the agreement made with the plaintiff of May 18, 1886, he had not paid the plaintiff, and refused to recognize his rights in the fund, though he has the funds representing that interest in his hands."

Such is not the case disclosed by this record. It is not shown that the defendant acquired conveyances from Sylvester's heirs for the same purpose that Sylvester had obtained deeds from the heirs; nor is it shown that he recognized the rights of all the other heirs to a share of the proceeds of the sale of the land. On the contrary, it now appears that the agreement under which Stephen Collar claims an interest through Sylvester was in writing, defining the purposes for which Sylvester received the conveyances entered into between four of the heirs, including the plaintiff; and it was with reference to these same four heirs that the original promise to pay $225 was made on May 18, 1886.

The judgment must be reversed, and a new trial ordered.

The other Justices concurred.