RAPLEY *v.* McKINNEY'S ESTATE.

1. EVIDENCE—RECORDS—FORMER DECREE.

> A landowner agreed with a railroad company that it might build across the land, and when he could make title it would pay him the sum to be awarded by arbitrators. Subsequently a mortgage on the land was foreclosed and M. advanced funds to redeem, taking a deed from the foreclosure purchaser as security for the amount advanced. M. brought ejectment against the railroad company which thereupon filed a bill to enjoin the suit at law and enforce the agreement, which resulted in a decree in its favor and the payment of the consideration for the right of way to M. After M.'s death an assignee of the landowner made a claim against his estate on the theory that M. received the fund in trust for him under a parol agreement to so hold it. *Held*, that on a trial of the contest the decree and records in the chancery case were admissible as showing the origin of the fund, and as explanatory of the central fact in the case.

2. STATUTE OF FRAUDS—AGREEMENT CONCERNING LAND.

> A parol agreement by the vendee of a purchaser at foreclosure sale to deed a portion of the land to a railroad company for right of way and pay the consideration received therefor to the mortgagor is void under the statute of frauds.

3. TRUSTS—PAROL AGREEMENTS—VALIDITY.

> A parol agreement by the vendee of a purchaser at foreclosure sale to hold the title in trust for the mortgagor is void.

4. SAME—PERSONALTY.

> A valid trust in personalty may be created by parol.

5. SAME—EXECUTED CONTRACT—EXISTING FUND.

> Where a parol agreement by the vendee of a purchaser at foreclosure sale to deed a portion of the land to a railroad company for right of way and pay the consideration received therefor to the mortgagor has been carried out to the extent of making the deed and receiving the consideration, it cannot be said to be so far executed that a valid parol trust exists as to the money, the fund not having been in existence when the creation of the trust was attempted.

Error to St. Clair; Tucker, J., presiding. Submitted January 30, 1906. (Docket No. 67.) Decided March 27, 1906.

Jessie A. Rapley presented a claim against the estate of James McKinney, deceased, for an amount claimed to be due to plaintiff's assignor. The claim was allowed in part in the probate court, and the executors appealed to the circuit court. There was judgment for claimant on a verdict directed by the court, and contestants bring error. Reversed.

*Stevens, Graham & Stevens,* for appellants.

*Thomas Wellman,* for appellee.

HOOKER, J. This cause is before us on error to the circuit court, in a trial upon appeal from probate court, and the allowance of a portion of the claim of the defendants in error.

The record shows that some years ago, David Sexton, being the owner of a parcel of land upon which there was a mortgage, made an agreement with the Flint & Pere Marquette Railroad Company, under which it constructed its railroad across the premises, upon the condition that it should ultimately pay to Sexton such sum as should be awarded by arbitrators upon perfection of the title and conveyance. This sum was afterwards fixed at $150. Soon after the agreement was made the mortgage was foreclosed, and the premises were bid in at the sale by one Barrett. It is claimed by the claimant, Rapley, who asserts a right by assignment from Sexton, that Sexton made an arrangement with McKinney, whereby he provided the money necessary to redeem the land, and the title was transferred to him, as security for repayment by Sexton, and that by the arrangement McKinney's security was not to extend to the right of way of the Flint & Pere Marquette Railroad Company, and that Sexton was to be entitled to the amount to be paid by the company there-

for. The title standing in McKinney, after the expiration of redemption, the Flint & Pere Marquette Railroad Company filed a bill alleging the facts above stated (substantially), that McKinney held the premises for the use and benefit of Sexton, having taken a mortgage with notice of its claims, and as security merely, that he had commenced an ejectment case against the railroad company, and refused to carry out the agreement, that it could not state the amount of the award, and asking that the ejectment suit be restrained, and that McKinney and Sexton be required to deed the right of way upon payment of the amount of said award, upon its being ascertained and determined, which it offered to make. McKinney answered, denying that Sexton had any right or interest in the land, and that, although he attempted to make the contract alleged, it was not binding, and denied that any award or agreement to arbitrate was ever made. A decree in favor of the complainant followed, the amount found due from the railroad company being paid into court.

It does not appear that Sexton ever sought to redeem the land from McKinney, but, after McKinney's death, this claim was filed in probate court, against his estate. Upon the trial at circuit, the record in the chancery cause was received in evidence against objection. The decree in that case provided that a cross-bill, filed by Sexton, in which he prayed that McKinney should be required to execute a land contract for the premises to Sexton, should be dismissed, leaving him to any action at law that he might have against McKinney and Sexton's son, Edward, by reason of the facts set up in the cross-bill. It was shown that the amount of $177, paid into court by the railroad company, was paid over to McKinney's counsel, who applied one-half to payment for his services, and the remainder was applied upon a contract for the sale of the land to Edward Sexton. It was shown that the whole amount fixed by the arbitrators was $150. The court held and charged the jury that David Sexton was entitled to the money, from the railroad company, but that he was

under obligation to reimburse McKinney for the expenses of its collection, and that the arrangement to give counsel one-half was a reasonable one, and directed a verdict for the claimant for $97.34, one-half of the fund, and interest. The administrator has appealed.

The questions argued are:

1. Were the chancery records admissible?
2. Was the parol agreement between Sexton and McKinney void under the statute of frauds?
3. Was it without consideration?
4. Was the claim sufficiently proved to justify the direction of a verdict?

The only question of importance in this case, which the records of the chancery case tended to prove, was the origin of the fund which came to the hands of McKinney. The oral testimony showed that McKinney's counsel received the amount under a contract with McKinney to collect this claim against the railroad. Instead, he began an ejectment suit claiming title. Thereupon the railroad company filed a bill against him and Sexton, and enjoined the ejectment case, and compelled specific performance of a contract, paying over the agreed consideration to McKinney through the clerk. This record was received for no other purpose as the record shows. It was proper for that purpose. By taking the amount of the decree, it is as though an admission of McKinney had been shown that this identical money was received from the railroad as compensation for its right of way. The pleadings, to the introduction of which special importance is attached, proved nothing of significance, and, like the decree, are valuable only as explanatory of the central fact. He was a party to that litigation, and we need not inquire whether it raised and adjudicated rights as between him and Sexton for no claim that it did is made, and it is not apparent that it was given any weight by the circuit judge, whose action could as well have been, and probably was, based upon other testimony, which alone could justify it. The answer of Sexton states his claim, but

only as a pleading, and would not be admissible as evidence of such facts; but it is of assistance in showing that certain questions in the present case were not disposed of in that case. No harm resulted if it was not admissible for this purpose.

The rock upon which claimant's right to this money must rest, is the alleged agreement between Sexton and McKinney that the latter should furnish money for the redemption of the place as a loan to Sexton, and take a conveyance from the purchaser at foreclosure sale, as security, and that this security should be subject to the rights of the railroad, and that the money, when received from the railroad, should be paid to Sexton. If it can be said that the testimony shows that Sexton had any right of redemption at the time that McKinney took his deed from Barrett, so that such deed can be held to be a mortgage from Sexton to McKinney, under the rule laid down in *Malone* v. *Danforth*, 137 Mich. 227, the parol promise that McKinney should convey the land either to Sexton or the railroad company, and pay the price which should be received therefor, to Sexton, was void, under the statute of frauds. The claimant cannot be heard to say that this deed does not cover the half acre; for to do so would be to contradict, not only the express terms of the deed, but the only testimony that we have in the case, viz., that the course taken was for the express purpose of giving McKinney a title to the half acre, which should be superior to the railroad claim. That McKinney was to hold title to this for the benefit of Sexton may be true, but, if so, he was to hold it in trust for Sexton for some purpose, and such trust was void under the statute. But it may be said that the oral arrangement, though void, has been carried out, to the extent of converting the half-acre parcel into money, and that such money is a trust fund, held for the benefit of the claimant, under the rule followed in *Calder* v. *Moran*, 49 Mich. 14. That a valid trust in personalty may be created by parol, is indisputable, in view of the decision in the case of *Calder* v. *Moran*,

supra, and the earlier cases of *Bostwick* v. *Mahaffy,* 48 Mich. 342, and *Bowker* v. *Johnson,* 17 Mich. 42. These cases have been approved in the following cases: *Chadwick* v. *Chadwick,* 59 Mich. 87; *Penny* v. *Croul,* 76 Mich. 471 (5 L. R. A. 858)—which were referred to in the late case of *Eipper* v. *Benner,* 113 Mich. 80, where it was not found necessary to decide the question. The difficulty with this view is that there was no personal property when the arrangement was made. It arose later out of the conveyance of the railroad parcel, and under the decision of *Collar* v. *Collar,* 86 Mich. 513 (13 L. R. A. 621), while the agreement might serve to show equities, the trust in the fund could not be enforced at law, unless a new promise was made thereafter. If the rule were otherwise the statute of frauds would be practically nullified because it might be safely disregarded. Moreover, the right to redress would be left to depend upon what the grantee should do with the land. As counsel for the appellant say:

"Such an arrangement could not possibly give Sexton any greater right than if he had quitclaimed his interest in the land occupied by the railroad company to McKinney, with the understanding that McKinney would sell the same, and would turn over a part or all of the proceeds to Sexton."

Counsel for the claimant seek to treat the fund as existing at the time the arrangement was made, upon the theory that the railroad company became indebted to Sexton when the amount was fixed by the arbitrators. The railroad company promised to buy the land upon the perfection of the title, and to pay the sum thereafter to be determined upon conveyance, and went into possession under that arrangement. The amount was fixed, but title could not be made because of the existing mortgage. Hence the money was not due then, and did not become more than a conditional obligation until McKinney conveyed the legal title.

It follows that the court erred in directing a verdict for the claimant. It is unnecessary to discuss other questions.

The judgment is reversed, and a new trial ordered.

McALVAY, GRANT, OSTRANDER, and MOORE, JJ., concurred.