LONGE v. KINNEY.

1. WITNESSES— EVIDENCE — ESTATES OF DECEDENTS — PRINCIPAL AND AGENT — AGENT'S TESTIMONY EQUALLY KNOWN TO DECEDENT.

It was incompetent, as against the estate of a deceased person, for a trustee of land which he conveyed by an absolute deed to decedent, and which he previously held in trust for a third party who consented to the transaction, to testify that decedent took the land subject to the trust impressed upon the property, agreeing to carry out its provisions as to the beneficiary, the witness having acted as the agent and attorney of the grantee. Act No. 30, Pub. Acts 1903; 3 Comp. Laws, § 10212.

2. Evidence—Deeds—Parol Contradictory Testimony.

In the absence of fraud, mistake, or accident, a grantor in an absolute conveyance, reciting a valuable consideration, cannot show by parol evidence that the grantee was to hold the lands conveyed in trust. 2 Comp. Laws, § 8849.

3. Same.

Parol evidence is inadmissible to contradict the unambiguous terms of a deed.

4. Same.

Nor could the alleged trust be created by parol, under 3 Comp. Laws, § 9509.

5. Limitation of Actions—Payment—Laches—Evidence — Presumption of Payment.

Delay of 21 years before attempting to enforce payment of a debt gives rise to a presumption of payment.

Appeal from Ionia; Davis, J. Submitted June 17, 1912. (Docket No. 125.) Decided July 11, 1912.

Bill by Nellie Longe against Will Kinney, administrator *de bonis non* with the will annexed of the estate of Mary O'Day, deceased, and others, to enforce an alleged trust. From a decree for complainant, defendants appeal. Reversed; bill dismissed.

*R. A. Hawley*, for complainant.

*Scully & Davis*, for defendants.

On July 19, 1889, Patrick O'Day made his last will and testament, the material provisions of which are as follows:

"I hereby give, devise and bequeath the following described real estate [describing forty acres] to my executor hereinafter named, in trust, however, to sell the same and out of the proceeds thereof to pay all my debts and funeral expenses, and the expense of administration of my said estate, and the balance of such proceeds to be paid to my adopted daughter, Nellie O'Day, of the said village of Saranac, and it is my will that the executor of this my last will and testament shall with all convenient speed after my decease, bargain, sell and alien in fee simple the said above described premises for the closing, executing

and perfecting of which I do by these presents give to my said executor full power and authority to grant, alien, bargain, sell, convey and assign, all the said lands and premises hereinbefore described to any person or persons, their heirs and assigns forever, in fee simple by all and every such lawful ways and means in the law as to my said executor shall seem fit or necessary."

Follows a devise of lot No. 19 in the village of Saranac "to my adopted daughter Nellie O'Day and to heirs and assigns forever." Then follows a devise of certain other lands described "to my wife Mary O'Day." Patrick O'Day died shortly after the execution of this will, which was, on the 17th day of August, 1889, admitted to probate, and the executor therein named, Royal A. Hawley, a reputable and experienced attorney, duly qualified and filed his bond as such. On September 2, 1889, said Hawley executed a quitclaim deed of the 40 acres devised to him in trust to Mary O'Day for the expressed consideration of $300. The deed recites:

"This deed is made under and by virtue of the terms of the last will and testament of said deceased person and the power of sale in said will contained."

The deed is absolute upon its face, containing no words of limitation or anything to indicate that the grantee therein named took the land in question impressed with any trust. The complainant, Nellie Longe, is the same person mentioned in the will of Patrick O'Day as "my adopted daughter Nellie O'Day." At the time of the execution of the deed by Mr. Hawley to Mary O'Day, Nellie O'Day was upwards of 21 years of age, was present at the time the transaction was consummated, and signed her name as a witness to the instrument. Mary O'Day kept the land in question until May 5, 1892, when she sold the same to James W. Tolles for the sum of $500. About the same time Mary O'Day sold some other lands devised to her by Patrick O'Day, and on the 18th day of May, 1893, she purchased a small house and lot in the city of Ionia for the sum of $300. She continued to reside in

this place until the time of her death, on the 9th day of September, 1909. She left a last will and testament, in which she devised and bequeathed all her property to certain of her nephews, grandnephews, and nieces. The assets of her estate, including the house and lot in the city of Ionia, amounted to about $900. The indebtedness of the estate as allowed by the commissioners on claims, together with the costs of administration, up to date, is $895.93. In the settlement of the estate the administrator procured leave to sell the real estate for the purpose of paying debts. Before this sale was consummated, complainant herein filed her bill, in which she charged that, at the time the conveyance was made from Hawley to Mary O'Day, an agreement was entered into, by virtue of which Mary O'Day became trustee for her of the proceeds of said land, and was liable to account therefor. She prays—

"That it may be ascertained and determined by the order and decree of this court that said Mary O'Day, deceased, and said Will Kinney, as administrator of the said estate, held and hold the purchase price of the lands and premises hereinbefore particularly described, and which were sold by said deceased in her lifetime as hereinbefore set forth, as trustees for the use and benefit of your oratrix, and that said Will Kinney, as such administrator, may be required to account to and with your oratrix for the proceeds of the sale of said real estate, and to pay over to your oratrix what may be justly her due on such account."

She also prays for an injunction against the administrator restraining him from selling the real estate in question.

Two witnesses were produced on the part of the complainant, whose testimony, it is alleged, tends to establish the fact that Mary O'Day accepted the deed of the 40 acres in question as a trust. Mr. Hawley, the executor named in the will of Patrick O'Day, testified in part as follows:

"During the course of the conversation I asked Nellie O'Day, now Nellie Longe, the complainant in this case,

if she was satisfied to have me make a deed in that way to Mrs. O'Day. She stated she was; that it was all agreed upon and understood between herself and mother. I don't know whether they stated what the circumstances of the agreement were or not, but the talk was between Mrs. O'Day and myself that she was to assume the responsibility that I had assumed in accepting this office of trust as executor. That was understood and agreed upon, and I made the deed.  *  *  *

"*Q.* I don't suppose you claim just now to give the language that occurred there at that time?

"*A.* Oh, no; I wouldn't undertake to give the language.  *  *  *

"*Q.* There is no conditions embraced in this deed upon Mrs. O'Day?

"*A.* No, sir; no further than it states the deed was given under the power contained in the last will and testament of Patrick O'Day.

"*Q.* You had the power to give a straight warranty deed, didn't you, under the will?

"*A.* I should judge so; yes. I don't think I had a word of conversation with Mrs. O'Day from that time until the time of her death. At this time Nellie O'Day was living with Mary O'Day and unmarried. What occurred between them afterwards or before they came to my office in reference to this deed I don't know anything about. I don't know how much Mrs. O'Day paid Mrs. Longe out of the proceeds of this property before or after.  *  *  * I got my pay for whatever I did. If I received pay, it was from Mary O'Day. I never have been discharged as executor. I don't know anything about the amount of debts of Patrick O'Day, or the costs and funeral expenses, of my own knowledge."

Mrs. Margaret Tolles, the wife of James Tolles, who purchased the 40 acres from Mary O'Day, on May 5, 1892, gave the following testimony:

"*Q.* Were you present at the time your husband purchased this property of Mrs. O'Day?

"*A.* When they had their first talk, I wasn't present, but she called at our place a couple of times to see about selling it to him. She was quite anxious to sell it. I listened to the conversation they had.

"*Q.* Did you hear her say what she intended to do with the proceeds of this land?

"*A.* She said what she received from this land didn't pay her to take care of it, that she could do better with the money, so she was anxious to sell it. She wanted it for her daughter, Nellie. It was intended for her."

There is no other testimony in the record tending to establish a trust relation between Mary O'Day and Nellie O'Day (now Longe). Upon a hearing in the court below, a decree was entered declaring that Mary O'Day held the proceeds of the 40 acres in question in trust for Nellie O'Day (now Longe), and directing the defendant administrator to pay to complainant from the estate in his hands the sum of $530. It is further decreed that "no debts allowed by commissioners on claims or judge of probate to be deducted from the amount due complainant." The sum allowed was decreed to be paid in part out of cash in the hands of the administrator, and, in default of the payment of the full amount, the real estate remaining in the estate was directed to be sold. From this decree, defendants appeal.

BROOKE, J. (*after stating the facts*). The first question requiring consideration is whether the testimony of Mr. Hawley is competent. 3 Comp. Laws, § 10212, was amended by Act No. 30 of the Public Acts of 1903 to read in part as follows:

"No person who shall have acted as an agent in the making or continuing of a contract with any person who may have died, shall be a competent witness in any suit involving such contract, as to matters occurring prior to the death of such decedent, on behalf of the principal to such contract against the legal representatives or heirs of such decedent, unless he shall be called by such heirs or legal representatives. * * * *Provided*, that whenever the words 'the opposite party' occur in this section, it shall be deemed to include the assignors or assignees of the claim or any part thereof in controversy."

This statute has been construed in the following cases: *Gustafson* v. *Eger*, 132 Mich. 387 (93 N. W. 893); *Detroit United Railway* v. *Smith*, 144 Mich. 235 (107

N. W. 922); *Locklund* v. *Burman's Estate,* 146 Mich. 233 (109 N. W. 255); *In re Reidy's Estate,* 164 Mich. 167 (129 N. W. 196); and in *Bigelow* v. *Sheehan,* 166 Mich. 89 (131 N. W. 78). In making the conveyance in question, it is clear that Mr. Hawley was the assignor of Mary O'Day. From his own testimony it likewise appears that in said transaction, so far as he represented anybody, he acted as agent for Mary O'Day, and was by her compensated for his services as such. A further reason is urged against the competency of Mr. Hawley's testimony from the fact that it tended to contradict the plain terms of a written instrument. The deed is absolute upon its face, and is made in pursuance of the powers granted by the will of Patrick O'Day. Those powers included the right to make an absolute sale of the land in question, but granted no power to create a new trustee.

3 Compiled Laws, § 8849, provides:

" When the trust shall be expressed in the instrument creating the estate, every sale, conveyance, or other act of the trustees, in contravention of the trust, shall be absolutely void."

The rule is laid down in 13 Enc. of Ev. p. 121, as follows:

" It is generally held that in the absence of fraud, mistake or accident, that the grantor in an absolute conveyance, reciting a valuable consideration, cannot show by parol evidence that the grantee was to hold the lands conveyed in trust for his benefit."

Cases are cited from many jurisdictions in support of the text. It is said in *Willis* v. *Robertson,* 121 Iowa, 380 (96 N. W. 900):

"The promise of a grantee in a deed, absolute on its face, to hold the property for the benefit of the grantor's heirs, cannot be shown by parol; nor will his subsequent refusal to fulfill the promise constitute a fraud converting the deed into a trust, where the execution and delivery of the same was not induced by the wrongful act or promise of the grantee."

By the terms of the will of Patrick O'Day, Mr. Hawley was charged with the duty of paying the debts, funeral expenses, and expenses of administration of the estate of said O'Day, and with the payment of the balance to Nellie O'Day. His testimony is that Mary O'Day—

"Was to assume the responsibility that I had assumed in accepting this office of trust as executor; that was understood and agreed upon and I made the deed."

If Mary O'Day took the deed in question charged with any such duty to the estate of Patrick O'Day, it is clear that the existence of such an obligation must be found outside of the instrument itself. The general doctrine is well stated in 9 Enc. of Ev. p. 331, as follows:

"It is a general rule that evidence of a prior or contemporaneous agreement which is inconsistent with the terms of a written instrument, complete upon its face, and unambiguous, is, in the absence of fraud or mistake, inadmissible to contradict, vary, or in any way alter the terms of the written instrument, as all such agreements are presumed to be merged in the writing, or, if not embraced therein, to have been rejected by the parties"—citing cases.

A further and controlling argument against the position of complainant may be found in 3 Comp. Laws, § 9509, which reads:

"No estate or interest in lands, other than leases for a term not exceeding one year, nor any trust or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered or declared, unless by act or operation of law, or by a deed of conveyance in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same, or by some person thereunto by him lawfully authorized by writing."

In *Hayes* v. *Livingston*, 34 Mich. 396 (22 Am. Rep. 533), it is said:

"The law does not permit title to lands to rest in parol, nor does it allow anything which is evidenced by the

deeds to be changed on parol testimony of promises, agreements or understandings."

The deed in question created no trust relations between complainant and Mary O'Day, and, if the testimony of Mr. Hawley could be considered, it would show only an agreement between them with reference to complainant's interest in real estate, said agreement not being evidenced by any writing as required by the statute. In *Mitchell* v. *Bilderback*, 159 Mich. 483 (124 N. W. 557), this court said:

"The alleged agreement to sell this land and divide the proceeds was made in 1898, and was manifestly void under the statute of frauds. That was seven years or thereabouts before the sale of the land by Dill. Therefore there was not at that time a fund in existence in which a trust could be created by parol"—citing *Rapley* v. *McKinney's Estate*, 143 Mich. 508 (107 N. W. 101), and *Collar* v. *Collar*, 86 Mich. 513 (49 N. W. 551, 13 L. R. A. 621).

So, in the case at bar, the alleged agreement was made some years before the alleged trust fund was created by the sale of the land in question. The record contains no evidence as to what Mary O'Day paid in settlement of the debts and funeral expenses of her husband, Patrick O'Day; nor does it contain any competent evidence that she did not in her lifetime pay to Nellie O'Day the difference between the amount of said debts and funeral expenses, and the amount received by her for the 40-acre farm in question.

The record shows that during the latter years of the life of Mary O'Day, the relations between herself and the complainant were strained in character. It is, we think, very significant that the complainant, who at the time of the transaction in question was more than 21 years of age, should have waited 21 years before attempting to enforce her alleged rights. The unexplained delay of a creditor to enforce his claim for so long a period gives rise to a presumption of payment. See 9 Enc. of Ev. p. 709; 18 Am.

& Eng. Enc. Law (1st Ed.), p. 207; 22 *Id.* (2d Ed.), p. 591, and cases cited. We are of opinion that the testimony of Mr. Hawley was clearly incompetent under the statute, and, even assuming that it as well as that of Mrs. Tolles is admissible, it cannot be permitted to change the terms of the deed in question, which is plain, unambiguous, and absolute upon its face.

The bill of complaint is dismissed, and defendants will recover costs of both courts.

MOORE, C. J., and STEERE, MCALVAY, STONE, OSTRANDER, and BIRD, JJ., concurred. BLAIR, J., did not sit.