### HACKER v. HACKER.

1. APPEAL AND ERROR—ACCOUNTING—ITEMS ALLOWED IN CIRCUIT COURT.

On defendant's appeal from decree in suit for accounting, issues are limited to items allowed in the circuit court where plaintiff did not appeal.

2. ACCOUNTING—EQUITABLE WARDSHIP—TRUSTS.

In suit for accounting between two brothers each over 80 years of age, in so far as decree for plaintiff is based upon amount he received from the estate of their aunt who had agreed to leave her estate to the parties herein in return for care and support until her death, it is reversed where evidence showed such share had been given defendant many years before because latter had cared for the aunt and had cared for and educated plaintiff's four children prior to his divorce from his second wife, plaintiff was not a mentally incompetent person and relation between parties was not that of an equitable wardship or trust rendering defendant brother and wife accountable.

3. SAME—CERTIFICATES OF DEPOSIT—EVIDENCE OF CONVERSION.

Certificates of deposit made payable to defendant or plaintiff or to defendant or in the event of his death to plaintiff but which were at all times the deposits of defendant and subject to his control in reissuance or withdrawals *held*, to carry no evidence of fixed rights therein in plaintiff upon which to base a holding of conversion by defendant of money belonging to plaintiff.

4. SAME—TRUSTS—FEE SIMPLE—STATUTE OF FRAUDS.

In suit by plaintiff for accounting by defendant brother and wife, allowance of item claimed for proceeds of sale of farm to plaintiff's daughter and her husband, made in presence of plaintiff *held*, improper, where evidence showed plaintiff had sold land to defendant at insistence of plaintiff's wife and vested in defendants the fee simple title, as no trust or verbal reservation thereover existed or could be impressed by the court under the statute of uses and trusts and the statute of frauds (3 Comp. Laws 1929, §§ 12967, 13411).

5. TRUSTS—REAL ESTATE—PAROL EVIDENCE.

A trust in real estate cannot be established by parol evidence.

6. DEEDS—FEE SIMPLE.

As between parties to transaction involving real estate a deed conveying title in fee simple is controlling.

7. ACCOUNTING—SALE OF REALTY—DEEDS.

In suit for accounting by defendants, brother and sister-in-law of plaintiff, for proceeds of sale of real estate alleged to have belonged to plaintiff, record *held*, without evidence of mistake, fraud or anything upon which to predicate a resulting trust in connection with deed previously given by plaintiff to defendants.

8. SAME—FIDUCIARIES—EVIDENCE.

In suit for accounting between brothers over 80 years of age, for moneys alleged to have been held by defendant in a fiduciary capacity, evidence *held*, insufficient to hold defendant brother and wife possessed of any moneys belonging to plaintiff.

Appeal from Sanilac; Cramton (Louis C.), J., presiding. Submitted October 12, 1938. (Docket No. 55, Calendar No. 40,125.) Decided February 2, 1939. Rehearing denied March 10, 1939.

Bill by John C. Hacker against James J. Hacker and Elizabeth Hacker for an accounting, an injunction and other relief. Decree for plaintiff. Defendants appeal. Reversed.

*Paterson & Paterson* (*Robert W. McKenzie,* of counsel), for plaintiff.

*Benedict & De Puy* (*Walsh, Walsh & O'Sullivan,* of counsel), for defendants.

WIEST, J. John and James Hacker are brothers and each is above 80 years of age. For years they owned neighboring farms, and the bill herein was filed by John against his brother and wife to have an accounting under the claim that James, throughout the years, acted in a fiduciary capacity for plaintiff and deposits by James in various banks represented money belonging to plaintiff, and that defendant's wife held title to real estate, subject to a parol trust and, therefore, money she received from the sale thereof should be accounted for as belonging to plaintiff.

The circuit judge decreed that money deposited in certain banks by James belonged to John, and found James and his wife indebted to John in three amounts specified.

Appeal is by defendants. Plaintiff not having appealed, the issues here are limited to the items allowed in the circuit court.

Counsel for plaintiff claims that James "was a self-appointed guardian of John and that John submissively consented to the skill, better judgment, and experience and honesty of his older brother."

Under the theory of a trust relationship between these parties we are asked to review their affairs over a period of nearly 40 years.

April 28, 1909, James J. Hacker was appointed
guardian of Sophia Lorens, an incompetent, in the
probate court for the county of Sanilac. His annual
account as guardian, filed in January, 1911, showed
$6,042.18 in bank deposits. Sophia Lorens died Sep-
tember 21, 1911, and James J. Hacker was appointed
executor of her estate and, as such, his final account
was allowed on January 13, 1912, and, in accordance
with her will, the estate was assigned to James J.
and John C. Hacker in equal parts. James J.
Hacker, however, retained the whole estate and filed
plaintiff's satisfaction of his share. This express
satisfaction by John was in fulfillment of an agree-
ment theretofore made between the brothers. The
aunt, in consideration of the nephews, John and
James Hacker, providing her a home and care, exe-
cuted a will in December, 1897, devising to them her
estate. The aunt first went to live at the home of
plaintiff. Plaintiff was then living with his second
wife, whom he had married in 1890, and what then
happened is well set forth in plaintiff's sworn an-
swer to a bill for divorce by his wife, filed Janu-
ary 25, 1912, within 12 days after the estate of the
aunt had been closed, in which bill it was charged
that John, her husband, for the purpose of depriv-
ing her and her children of rights had, in pursuance
of a conspiracy with his brother James, turned his
share in the estate of his aunt and certain real estate
over to James. John C. Hacker was granted a di-
vorce on his cross-bill. We quote from that sworn
answer and cross-bill the following:

"Said complainant * * * would not keep the
house in such condition as to provide a fit home for
your orator's aunt, said Sophia Lorens, thus making
it impossible for your orator to carry out his part
of the aforesaid arrangements with his said aunt,

and while he at first had made arrangements with his said brother, James Hacker, to provide for said children (four young children of his first marriage) for a fixed sum per week, he finally found that it became and was impossible to carry the burden thus placed upon him, whereupon he was forced by said conduct of complainant to arrange with his brother, James, for his said brother, James Hacker, to assume all of your orator's obligation to his said aunt and to care for, and support and educate the aforesaid four children of your orator and in payment thereof said James Hacker was to receive your orator's full inheritance, whatever that might be, from the estate of said aunt, Sophia Lorens, which said arrangement has been fully carried out by all parties to the same, and after the death of said aunt, said arrangement being fully completed, your orator received no part of said estate, your orator's share which would have amounted to about $2,000, only for the aforesaid contract, was retained by the said James Hacker, who was executor of the estate, in full payment and satisfaction of the aforesaid contract, your orator receipting therefor that the estate of the said Sophia Lorens might be closed.''

James cared for and educated plaintiff's four children until they reached ages of self-care and support, and cared for and supported the aunt until her death.

The decree below awarded plaintiff $4,539.52, evidently computed as his share of the aunt's estate, with interest. In so far as traceable to that estate the award is reversed and such part, if any, not so traceable cannot be recovered in this suit.

During the years here involved John was not a mental incompetent, nor is such claim made, but rather that he was frugal, industrious and mentally capable of managing his own affairs, had he cared to

do so. The dealings between plaintiff and defendants were a matter of choice on the part of John, not induced by fraudulent purpose on the part of defendants, and stand without the essentials required to constitute the relation an "equitable wardship" or trust rendering defendants accountable in the court of equity.

Deposits by James, with certificates made payable to "James J. Hacker" or "John C. Hacker," or to "James * * * or in the event of his death to John," were at all times the deposits of James, subject to his control in reissuance or withdrawals and carried no evidence of fixed rights therein in plaintiff upon which to base a holding of conversion by James of money belonging to John.

In April, 1924, Carolena Tanner, daughter of plaintiff, and Charles Tanner, her husband, wanted to purchase 80 acres of land, with title thereto standing in defendants, under deeds from plaintiff and, on April 30, 1924, defendants, for a consideration of $2,500, conveyed the premises to the Tanners by warranty deed. Plaintiff was present when the money was paid to James and made no claim of right thereto.

It is now claimed, in behalf of plaintiff, that defendants held the title for his benefit under a verbal agreement, and the court below so adjudged and awarded plaintiff a certificate of deposit found to represent $1,469.63 of the purchase money.

In 1912, in his sworn answer to the bill of complaint of his then wife for divorce, plaintiff averred:

"This defendant admits that he has been industrious all of these years and has raised some cattle, but never by the aid of said complainant who has always been a detriment to this defendant and her endeavors have invariably been to work in every manner against the interest of this defendant in his

attempts to accumulate property for complainant, this defendant and their family. He denies that he has ever turned any property over to his brother, James, in pursuance of any conspiracy or deprived said complainant of any rights therein, or for any other purpose whatsoever, except as such as he has sold to his said brother, James, or as belonging to his said brother.

"This defendant denies, as he has heretofore denied, any conspiracy whatsoever, and verily believes he could have been worth some property had he never met complainant, or had complainant performed her duties as a wife and not squandered their property in divers manners and particularly in instituting divorce proceedings.

"This defendant has no knowledge of what said complainant may have been informed but alleges the truth and fact to be that said complainant well knows that she urged upon this defendant to sell said 40 acres of land and went herself to see the brother of this defendant, James Hacker, and urged him to buy this land, and it was to please the whims of said complainant that this defendant consented to and did sell the same to said James Hacker, and to carry out said sale said complainant went with said defendant to the office of a justice of the peace to make said deed."

We will not extend this opinion by the recital of other evidence, clearly showing that plaintiff deeded property to defendants and vested title thereto in fee simple. Such being the case no trust or verbal reservation thereover existed or could be impressed by the court. The statute of uses and trusts, 3 Comp. Laws 1929, § 12967 *et seq.* (Stat. Ann. § 26.51 *et seq.*), and the statute of frauds, 3 Comp. Laws 1929, § 13411 (Stat. Ann. § 26.906), forbid. A trust in real estate cannot be established by parol evidence. As between the parties the deed, if in fee simple, con-

trols.   *Longe* v. *Kinney,* 171 Mich. 312; *Funk* v. *Engel,* 235 Mich. 195; *Hewelt* v. *Hewelt,* 245 Mich. 108; *Elson* v. *Elson,* 245 Mich. 205.

There is no evidence of mistake or fraud and nothing upon which to predicate a resulting trust.

The testimony of the brothers, because of their ages and mental infirmities, is not helpful.   Claimed casual remark by James that money in a bank in his name belonged to John constitutes the weakest of evidence and, under the circumstances here disclosed, is of no decisive importance.   The fact that James accumulated a considerable estate and John has little or nothing cannot lead to a division of James' property in behalf of John, especially considering the claim John made in 1912, when his second wife applied for a divorce, and he made answer that on account of her extravagances he had lost practically all of his property.

We are unable, from this record, to find James possessed of any moneys belonging to John.

Upon due consideration of the whole record and applicable law the plaintiff made no case justifying the decreed awards, and the decree is reversed and the bill dismissed, with costs to defendants.

Bushnell, Sharpe, Potter, Chandler, North, and McAllister, JJ., concurred.   Butzel, C. J., did not sit.