Submitted on briefs November 7; affirmed December 10, 1935

In re Steele's Estate

# GARDNER *v.* ROBERTS

(52 P. (2d) 207)

*Henry S. Westbrook,* of Portland, for appellant.

*McCutchan & McCutchan,* of Portland, for respondent.

BAILEY, J. Mardith Roberts, administratrix of the estate of David E. Steele, deceased, appeals from a judgment against her and in favor of Belle Gardner, formerly Belle Burnette, in the sum of $1,070.97. The claim as filed against the estate by Belle Gardner was for the sum of $2,620.03, consisting of items for services performed, money advanced to and on behalf of David E. Steele, and for his board. Upon rejection thereof by the administratrix a trial was had before the court and a jury, resulting in a verdict on which the above judgment was rendered.

Special interrogatories were submitted to the jury. Those on which the general verdict and judgment were based were answered as follows:

"3. Did the claimant, Belle Gardner, pay to Dr. E. M. Anderson, on or about the 28th day of May, 1932, at the request of the decedent David E. Steele the sum of $50 for services rendered decedent David E. Steele by the said Dr. E. M. Anderson? A. Yes.

"4. Has any of the same been repaid to her. A. No.

"5. Did the claimant, Belle Gardner, loan to the said David E. Steele on or about May 23, 1932, the sum of $1,000? A. Yes.

"6. Has any portion of the said sum been repaid to claimant? A. No.

＊　　　＊　　　＊　　　＊　　　＊

"18. What amount of interest, at the rate of six per cent per annum, had accrued upon any of the foregoing items of claimant's demand up to the 22d day of September, 1932, when decedent David E. Steele died? A. $20.97."

The jury found against the claimant as to the other items in her demand upon the administratrix.

It is the contention of the claimant that on or about May 23, 1932, she loaned to David E. Steele the sum of $1,000, in order to enable him to have in the bank a sufficient sum to cover a check for $1,427.04 which he had sent to the sheriff of Multnomah county in payment of taxes for the year 1931. In order to prove that this money had been loaned to Mr. Steele there was evidence introduced other than that of the claimant herself, showing that, on May 5, 1932, Mr. Steele gave to the tax collector of Multnomah county a check bearing that date, for the sum of $1,427.04. The record of the sheriff's office shows that on May 25, 1932, a check for identically the same amount, together with other checks and cash on hand amounting in all to $79,396.98, was by the sheriff deposited in the Canadian Bank of Commerce in Portland; that the checks and cash included in the slip for that deposit were received by the sheriff on or before May 5 and were not deposited earlier due to rush of business in his office; that the receipts for those taxes show that they had been paid as of May 5; and that his tax statement was returned to Mr. Steele by letter postmarked at Portland on May 26 of that year.

Mrs. Gardner had at this time, and for many years prior thereto had maintained, a box at the Commerce Safe Deposit Vaults in the Chamber of Commerce building, to which Mr. Steele had joint access. According to the records, he visited this vault in the afternoon of May 23, and on the same day he deposited to his account in the First National Bank of Portland the sum of $1,000. This is evidenced not only by his deposit book but also a deposit slip. In the deposit book after the entry of this sum there is written, by the hand of decedent, according to some of the witnesses, "loan to make tax ck O. K.". The check for $1,427.04 given to the sheriff was cashed by the First National Bank on May 27 of that year.

The record discloses that decedent's father, a man 86 years old at the time of the trial, testified that his son, a month or six weeks prior to his death, had told him that he had borrowed from Mrs. Gardner the sum of $1,000 to assist in paying his taxes. Fred C. Levy, who had been soliciting the decedent for insurance, testified that Mr. Steele stated, in the spring of 1932, that he was financially embarrassed and could not pay for the insurance and that he had been obliged to borrow $1,000 from Mrs. Gardner to pay his taxes. Mrs. Helen Heivele and Mrs. Mildred Leonhardt also testified that Mr. Steele had told them that he had borrowed $1,000 from Mrs. Gardner to pay his taxes. This statement to them, they testified, was made in the latter part of May or early in June, 1932.

It appears that Mr. Lamont was a special deputy in charge of tax collections in the sheriff's office and that he died about June 1, 1932. The occasion of Mr. Steele's making the remark to Mrs. Heivele and Mrs. Leonhardt was that he had just learned of Mr. Lamont's death. As Mrs. Heivele said: "Mr. Steele came in and said,

'Of all times Mr. Lamont had to die; wasn't it lucky I got that money from Belle to pay that check in the bank!' " Mrs. Leonhardt explained the occasion of Mr. Steele's remark to her as follows: "Well, it was when a friend of Mr. Steele's in the tax department died; he came up in the kitchen one day and told me he read in the paper where his friend in the tax department had died, and he felt easy that he had his money in the bank for the taxes, and the check was being held until such a time as the money was there to pay the check, and he had borrowed the money from Mrs. Burnette [Mrs. Gardner], to cover the check, and was all right now; the man had died and he was glad it was covered."

There were numerous witnesses who testified that Mr. Steele found it very difficult to meet the various claims against him and that he was delinquent most of the time in rent for the hotel which he operated, and in other obligations. His bank statement showed that he did not, from May 5 until the deposit of $1,000, have enough money in his bank account to pay the check for taxes.

Mrs. Gardner testified that she had in her safety deposit box on May 23, 1932, the date on which she claims she made the $1,000 loan to Mr. Steele, money in excess of that amount; that Mr. Steele had advised her that he had given his check for over $1,400 to the sheriff in payment of taxes and that it was necessary to get money somewhere to make the check good; that he wanted to borrow some money from her and she had authorized him to take from the deposit box $1,000; that a day or two later she counted the cash in the box and found that $1,000 had been taken; and that nobody except Mr. Steele and herself had access to the contents of the deposit box. She further testified that Mr. Steele

had many times promised to repay the money, with interest, but had refused to give her a note for the money he borrowed and had never given her any written evidence of the debt and had never admitted to her in the presence of any third party that he was indebted to her and would repay the money borrowed from her.

The only other claim allowed by the verdict in addition to principal and interest on this loan was the item of $50 paid by the claimant to Dr. E. M. Anderson. In support of this part of the demand Dr. Anderson testified that Mr. Steele had told him he would get Mrs. Gardner to give him a check for the amount of his fee for services, and that she had paid him by check the sum of $50. The check was introduced in evidence, dated May 28, 1932, payable to Dr. E. M. Anderson in the sum of $50, signed by Mrs. Gardner, and showing by cancellation that it was paid. The testimony of Dr. Anderson shows that his services were rendered to Mr. Steele on the latter's own request.

Near the close of the claimant's case and after Mrs. Gardner had taken the witness stand, counsel for the administratrix objected to any testimony by the claimant, on the ground that "there has not been introduced now any evidence upon which a verdict and judgment could be sustained as to the separate causes of action". This objection was overruled, and counsel for administratrix then moved for an involuntary nonsuit on the same ground, which motion was likewise denied. Later, after the claimant had rested, the administratix renewed her motion for an involuntary nonsuit. The rulings on this objection and the motions are made the basis of three of appellant's assignments of error.

In support of these assignments the appellant relies upon § 11-504, Oregon Code 1930; *In re Estate of Ban-*

*zer,* 106 Or. 654 (213 P. 406) ; *Mount v. Riechers,* 140 Or. 267 (13 P. (2d) 355) ; *In re Berger's Estate,* 144 Or. 631 (25 P. (2d) 138), and a few earlier Oregon cases.

Section 11-504, *supra,* provides in part as follows :

"No claim which shall have been rejected by the executor or administrator, as aforesaid, shall be allowed by any court, referee or jury, except upon some competent, satisfactory evidence other than the testimony of the claimant."

■■ It is asserted by the appellant that there was no competent, satisfactory evidence other than the testimony of the claimant herself sufficient to support the verdict of the jury. With this we can not agree. We have already referred to the proof offered by the claimant and are of the opinion that the same fulfills the requirement of the statute and that no error was committed by the trial court in submitting the case to the jury. The authorities relied upon by the appellant are not in conflict with this view. The statute "does not mean that the claimant is not a competent witness in his own behalf or that his testimony should be entirely ignored or disregarded. It should be considered as any other testimony in the case, but with this limitation that it alone is not sufficient to establish the claim": *In re Estate of McLain,* 126 Or. 456 (270 P. 534) ; *Field v. Rodgers,* 128 Or. 661 (275 P. 598).

■ The check given by Mr. Steele to the tax collector and the bank slip showing the deposit of $1,000 by Steele in the First National Bank were properly received in evidence as corroborating his admissions of having borrowed the money, the necessity therefor and the fact that $1,000 was procured by him and deposited in the bank in order to cover a check given for taxes.

During the examination of Mr. Levy the following occurred:

"Q. At that time he told you he had borrowed a thousand dollars from Belle to pay his taxes with? A. He didn't say he had to; he said he had borrowed a thousand dollars from Belle to pay his taxes and couldn't take up the insurance, so, I quit at that; another fellow was calling, too, and he said that Dave had to borrow money to pay his taxes."

■ Thereupon counsel for the administratrix moved "that that be stricken out, your honor, that is hearsay"; which motion was denied, and the court's ruling thereon is assigned as error. There is nothing in the record to show whether the statement made by the other caller mentioned in Levy's testimony was in the presence of Mr. Steele or not, and no attempt was made to ascertain where or in whose presence the statement had been made. At most, it was harmless error. It did not refer to any fact other than that Mr. Steele had to borrow money to pay his taxes, and in nowise connected the loan sued upon with the borrowing.

■■ While Mrs. Heivele was on the stand she was asked how long after Mr. Steele's death it was before she knew that Mrs. Gardner had filed a claim for items of $500 and $1,000, to which an objection was sustained. The record does not show how or in what manner her knowledge of the filing of the claim could have been material. This same witness while testifying broke down and sobbed, and counsel for the administratrix on cross-examination, after showing by her that she had testified in a prior case between the same parties about the same claim, asked her: "Do you remember, then, that you didn't give way to tears and cry in that case?" To this question an objection was likewise sustained. We can not see how the state of Mrs. Hei-

vele's emotions on a former trial was pertinent to any of the issues here involved.

■ W. B. Steele, father of the decedent, testified on direct examination that his son, while visiting him, said in response to the father's statement that he had no money: "Dad, I would give you some money but I am dead broke; I hain't got a dollar; I had to get a thousand dollars from Belle for to pay my taxes." This statement was alleged to have been made a month or six weeks before David E. Steele died. On cross-examination the witness denied that his son had told him at that time that Mrs. Gardner owed him a $2,500 note. He also denied that he had in the presence of two other people had any conversation with his son about such a note. He was then interrogated as follows: "I will ask you, then, if it isn't a fact that in the fall of 1929 or the spring of 1930, that you were at Dave Steele's house on Buckley avenue, Dave was present, Andy Magee was present, and Nettie P. Steele was present, when you discussed a $2,500 note that Belle Burnette [Mrs. Gardner] had given him, and didn't you advise Nettie P. Steele that Belle would get all that money?" To this question an objection was sustained.

It will be noticed that the elder Steele did not give as his opinion that his son was financially embarrassed. He was merely repeating what the son had told him. The question last quoted was propounded, according to the attorney for the administratrix, for the purpose of impeaching the witness. The question of whether or not the claimant had given a note to decedent was not brought out on direct examination.

The trial court must be permitted some discretion in conducting the trial of a case. Here we have a trial which lasted some four days and in which much evidence was introduced that to us does not appear to

have been germane to the matter involved in the litigation. The only pleading filed was the verified claim of Mrs. Gardner with a denial by the administratrix endorsed upon it. The trial court was lenient in permitting the introduction of testimony in the cross-examination of claimant and her witnesses and in the direct examination of witnesses for the administratrix, on all matters which were deemed material to establish the validity or invalidity of the claim. The matter regarding which the appellant attempted to impeach W. B. Steele was brought out on cross-examination and in no way tended to discredit his direct testimony. No error was committed by the court in sustaining the objection to the question last above quoted.

■ The appellant in her brief, under Point VIII, says: ''Point VIII covers exceptions 12, 13, 14, 15, 16, 17, 18, 19, 20 and 21, and this point is that the court received exhibits and excluded testimony particularly set forth and specified in these exceptions, which affected a substantial right of the appellant herein''. Not any of the exceptions referred to are set forth in the brief, and only two of them, Nos. 17 and 19, are discussed. We shall therefore not mention those assignments regarding which no argument is made.

■ Exception No. 17 has reference to the exclusion of the estate's exhibit 28 for identification, which was a bundle of receipts signed by Nettie P. Steele, former wife of the decedent. The objections to the admission of these was that they were attempted to be introduced as a whole and there was no evidence as to whether the sums therein specified had been paid, and no opportunity was afforded the claimant to cross-examine any one relative to the correctness of the recitals contained in the receipts. These documents cover a period of time from October, 1930, to approximately the time when

the $1,000 is alleged to have been loaned by claimant to the decedent. They show on the face in most instances the payment of $100 on principal and in the neighborhood of $60 interest, on a mortgage of $13,500. The apparent purpose of offering the receipts in evidence was to prove that the decedent was not financially embarrassed and was not in need of borrowing any money to pay his taxes. It was not contended by the claimant that the decedent was insolvent or that he was not paying indebtedness owed by him, but rather that at times he did need cash to meet some of his pressing obligations. It will further be noticed that these receipts were for payments made during a period prior to the time when the loan to decedent is alleged to have been made and did not tend to negative the admission by decedent that he had borrowed this money or the testimony of witnesses that he was in need of ready funds. Other receipts by canceled checks, properly identified, were admitted—many of them, if not all, without objection—showing that the decedent was paying out a considerable amount of money in his operations. The court committed no error in regard to the excluded receipts.

The other exception discussed under Point VIII is the refusal of the court to admit in evidence a single volume comprising a journal and ledger, containing in excess of 500 pages and apparently showing only the amounts due from tenants in the hotel operated by the decedent. In presenting this assignment of error the administratrix contends that these accounts purport to contain all the debts and obligations owed by the decedent as recorded by himself and that inasmuch as no indebtedness to Mrs. Gardner is therein listed an inference might be drawn that decedent did not owe her any money. When challenged by counsel for re-

spondent as to the purpose of offering this exhibit and questioned as to the particular entries relied upon, the administratrix made no attempt to enlighten opposing counsel or the court by referring to any particular entry or entries. From our examination of this volume we find nothing which purports to list the decedent's debts or which would in any way tend to refute the contention that he owed money to Mrs. Gardner.

■ The remaining exceptions refer to the refusal of the court to give certain requested instructions, not any of which are set forth in the brief as required by Rule 10 of this court, perhaps due to the opinion of counsel for appellant that they were too voluminous to incorporate in the printed brief, and which for the same reason we deem impracticable to set out in *haec verba* in the reports of this court. The first of these requested instructions is to the effect that if the decedent had access to the safety deposit box hereinbefore referred to as having been rented by the claimant, the law would presume that the money in it was his to the same extent that it belonged to Mrs. Gardner, and that if the jury should find that the money in the box belonged to the decedent and Mrs. Gardner jointly, and should further find that decedent took the money alleged to have been taken by him from the said box, such findings by the jury would not be sufficient to support Mrs. Gardner's claim, for the reason "that the law presumes an ownership of the property from the possession and control thereof". There was no evidence whatever to support some of the facts assumed. There was no showing that the money in the vault was owned jointly by the decedent and Mrs. Gardner.

■ The other points in the brief cover the refusal of the court to give two long and involved instructions relating to assumed illicit relationship or cohabitation

between the decedent and Mrs. Gardner. There is no evidence in the case to show that any such relationship existed. And what is more, there is no possible connection between the loan and advance of money to and on behalf of decedent by Mrs. Gardner and the existence of any meretricious relationship between the parties.

There are numerous other reasons, which are not here necessary to set out, for holding that the court's refusal to give these instructions should be sustained.

On appeal from an order allowing or rejecting a claim the question is not tried *de novo* as a suit in equity and we are not at liberty to substitute our judgment for that of the jury on conflicting evidence: *Bannon v. Thompson*, 136 Or. 311 (296 P. 907); *Liberty v. Koerner*, 151 Or. 411 (50 P. (2d) 768). We have not here attempted to set out the evidence which was adverse to that of the claimant, for the reason that on a motion for nonsuit the question to be passed upon is whether there is "some competent, satisfactory evidence other than the testimony of the claimant" sufficient to support the jury's verdict. In our opinion, there was such evidence in this case, and in the absence of any reversible error the judgment must be affirmed. It is so ordered.