Argued February 18; affirmed March 29; rehearing denied
June 14, 1938

## BAILEY ET AL. *v.* OPP ET AL.

(77 P. (2d) 826, 80 P. (2d) 40)

Department 2.

*George Mowry*, of Portland (John Mowry, of Portland, on the brief), for appellants.

*J. F. Fliegel*, of Medford, for respondents.

BEAN, C. J. This is an action for money, founded upon a written contract, as modified by an oral agreement. Verdict and judgment were rendered in favor of plaintiffs. Defendants appeal.

The defendants' mine, known as the "Opp Mine", for about 20 years was dormant and nonproductive. The timbers in the tunnels had rotted, the tunnels had caved in, and many of the portals had caved in and were grown over with brush.

On June 24, 1929, the defendants, who were husband and wife, entered into a written contract with the plaintiffs, who were husband and wife, of the following purport: The parties of the first part, the Opps, were the lawful owners of certain patented mining ground consisting of 360 acres, situated near Jacksonville, Jackson county, Oregon. The "Opp Mine", upon which much development work had been performed, consisted of divers tunnels, raises, drifts, crosscuts, etc., aggregating approximately 10,000 feet. The tunnels were designated by numbers from 1 to 18, inclusive. The Opps desired to improve and develop the mine in tunnel No. 11 and tunnel No. 2, as follows: Tunnel No. 11 was obstructed by caves, etc., and the pipe line to the

compressor was disconnected. The tunnel was to be cleaned out and the pipe line reinstated, and timbered where necessary, and approximately 100 feet of track was to be laid in the crosscut at the base of the drift, and the crosscut extended a distance of 25 feet; Tunnel No. 2 was to be cleaned out and extended 200 feet, likewise the pipe line and track was to be carried with such extension. The contract provided: "This work is to be done at any place designated by the first parties". The second parties, the Baileys, agreed to do the work and furnish the pipe for the pipe line, together with trackage, in a workmanlike manner, and furnish the material at their own cost and expense. The first parties, the Opps, in consideration thereof promised and agreed to pay to the second parties, for all of such labor and materials, the sum of $1,500 on or before October 1, 1929, and also to pay an additional sum of $10,000 in the following manner:

"The first parties, after all of the work has been completed and said equipment has been so installed, shall use their best efforts to make a sale of said property at a price agreeable to the first parties, and the first parties shall pay to the second parties, their successors or assigns, 15% (fifteen per cent) of each payment that shall be made upon the purchase price of said property at and when such payments shall be made respectively until said full amount of the sum of ten thousand ($10,000.00) dollars shall be paid, without interest. If said mine shall not be so sold, but shall be operated, then the first parties shall pay to the second parties, their successors and assigns, 15% of the net returns from the operation of said mine until said sum of $10,000, without interest, shall have been paid."

The contract provided that the mine was not to be charged with the payment of said sums; that is, they were not a lien upon the property. It further provided: "The second parties look entirely to the first parties

personally for the payment of said sums respectively, and this provision in this contract is made to define the manner of payment.''

The work was to be done in the shortest time possible. The second parties agreed to pay promptly for all labor and material in carrying out the contract. The title to the pipe, tracks and other material installed under the contract, after installation, was to belong to the first parties and be a part of said mine. The contract was duly signed and witnessed in duplicate.

Plaintiffs in their amended complaint allege:

"That subsequent to the execution of said contract, Exhibit 'a', the parties thereto orally modified said contract by mutual agreement, and under the terms of the agreement as modified, second parties, plaintiffs herein, were required to drift on the ore vein, located approximately 260 feet from the portal thereof, in an easterly direction a distance of 36 feet, and to install track furnished by defendants and pipe furnished by the plaintiffs, and to extend on the same ore vein in a westerly direction from a point 100 feet from said tunnel #2 to a point 170 feet, and to install track furnished by the defendants and pipe furnished by the plaintiffs, and plaintiffs herein were further required to cut through, muck and clean out a cave-in, and to timber the same where necessary, which said cave-in was unknown to the parties hereto at the time of the execution of said contract, Exhibit "A", and which cave-in was discovered in tunnel #11 about 965 feet from the portal thereof, and in addition thereto, plaintiffs herein were required to pay to the defendants the sum of $100 in cash, and in consideration for these additional services, materials and equipment to be furnished by the plaintiffs herein, it was mutually agreed by and between the parties that the plaintiffs should not be required to reinstate the pipe line to the compressor in tunnel #11, and that the plaintiffs should not be required to install 100 feet of track in the cross-cut at the base of the drift in tunnel #11, and that the plaintiffs should not be re-

quired to extend said cross-cut a distance of 25 feet or at all, or furnish any pipe or track therefor, and that the plaintiffs should not be required to extend tunnel #2 a distance of 200 feet or at all, and that the plaintiffs should not be required to furnish or install any track or pipe for said 200-foot extension in tunnel #2, and said requirement that the plaintiffs pay to the defendants the sum of $100.00 in cash was mutually agreed and intended that said payment shall constitute full and complete compliance on the part of the plaintiffs for any and all things undone, whether in the original written contract or as modified, excepting that the plaintiffs were required, subsequent to the payment of the $100.00 in cash, to complete cutting through and cleaning out said cave-in in tunnel #11, approximately 965 feet from the portal thereof, a distance of 96.2 feet and to timber the same where necessary. It was further mutually agreed by and between the parties to said contract that said contract shall otherwise remain in full force and effect.''

Plaintiffs further allege that they have duly and fully performed all the terms and conditions of said contract, as modified by the parties; that under the terms and conditions of said contract defendants agreed to pay to plaintiffs the sum of $1,500 on or before October 1, 1929, and an additional sum of $10,000, payable at the rate of 15 per cent of the purchase price of the property in the event that it was sold by the defendants, and 15 per cent of the net returns from the operation of said property in the event that it was not sold; that said property during all the times mentioned has not been sold by the defendants, but since October 22, 1931, the property has been operated by defendants through a lessee, the Pacific States Mines Inc., an Oregon corporation, and as a result from said operations the defendants have received net returns as rentals the sum of $8,800 and have received net returns as royal-

ties the further sum of $5,648.20. Defendants paid plaintiffs $330.50, which plaintiffs applied on the interest due on the $1,500 due October 1, 1929.

Defendants in their answer admitted making the written contract but deny any oral modification thereof, and deny the allegation that under the terms and conditions of said contract the defendants agreed to pay plaintiffs the sum of $1,500 on or before the 1st of October, 1929, and also an additional sum of $10,000, at the rate of 15 per cent of the purchase price of said property in the event the property was sold by defendants, and 15 per cent of the net returns from the operation of said property in the event that it was not sold.

A reply was filed putting in issue the new matter of the answer. Defendants filed a demurrer to the complaint upon the ground that same did not state facts sufficient to constitute a cause of action. The demurrer was overruled.

There is a direct conflict in the testimony in the case, which tended to support the allegations of plaintiffs' complaint. While the contract recites that the defendants were the owners of the mine in question, it is stated that Mrs. Rose Opp held the legal title to the mine. At the time of the execution of the contract Mrs. Opp was a graduate nurse in Portland, Oregon, and during the time plaintiffs were carrying out the contract she was there at different times, but most of the time she was in Portland. The negotiations for the contract were carried on by Mr. Opp and all of the circumstances showed that he acted as agent for Mrs. Opp.

The evidence further indicated the following: That plaintiff Robert S. Bailey worked in the mine and proceeded with the contract during the season of 1929 and employed labor, paying therefor $818, and expended $983.63 for equipment and materials, furthering the

contract. Mr. Opp was a miner of some 40 years experience. He lived upon the property during all the times mentioned. Plaintiffs hired men to work in tunnel No. 2, and Mr. Opp voluntarily supervised and gave credit for the work done, and the men agreed to accept pay upon the approval of Opp as to the amount of work done. Under that arrangement 160 feet of work was completed in tunnel No. 2 and paid for by plaintiff Bailey. During that time Mr. Bailey was working in tunnel No. 11, which had caved in at the portal, and in different parts of the tunnel up to 750 feet from the portal. At the time of the execution of the contract this first cave completely filled the tunnel, and it was contemplated by all parties concerned that this first cave extended about 20 feet, and this later was found to be 50 feet. Mr. Bailey, however, after he got through the first cave, discovered another cave about 150 feet farther in the tunnel, the extent of which was unknown to the parties. This seemed to be an obstacle to John W. Opp's plans in leasing or selling the property, and about the time that the second cave in tunnel No. 11 was discovered, John W. Opp instructed Mr. Bailey to suspend operations in tunnel No. 2 and devote his entire attention to the cave in tunnel No. 11. It was impossible for Mr. Bailey to obtain help because of the dangerous condition of the work and he proceeded to do the work himself during 1930 until in December. Mr. Opp was making efforts to sell or lease the mine, and when Mr. Bailey had tunneled into this second cave about 70 feet, Mr. Opp was confident that he would lease the property and he was also satisfied that the cave would continue to a certain raise, which would be 30 feet more. This proved to be correct. In view of the prospects of the lease, Mr. Opp stated to Mr. Bailey that if plaintiffs would give him $100 in cash he felt

sure that he could lease the property and he would call the contract completed, provided Mr. Bailey cleaned out the second cave sufficiently so that Mr. Opp and his prospect could go beyond and sample the ore. The request for $100 from Mr. Bailey by Mr. Opp, so he could go to Portland for the purpose of negotiating a lease of the mine, indicated that the defendants were not in affluent circumstances. Mr. Bailey delivered the $100 to Mr. Opp, and completed cleaning out and timbering the second cave.

Mr. Bailey furnished his own labor for a period of 18 months, 10 hours per day, and, valued at $5 per day, it figured $2,250, which, with the labor employed and expenditures, made a total of $4,151.63. Plaintiff Bailey paid promptly for all labor and materials. As soon as Bailey had broken through the second cave in tunnel No. 11, Opp showed the property and particularly tunnel No. 11 to one John Price, and the property was leased by defendants to John Price, which lease was later assigned to the Pacific States Mines Inc., and resulted in the defendants receiving the sum of $15,-827.45, if defendants' figures are correct. This was apparently the first money that had been produced from the mine, at least for a long time. The defendants received rentals from this lease, beginning November 3, 1931, and commenced payment to the plaintiffs in pursuance of the contract October 7, 1932.

During the performance of the contract Mrs. Bailey passed away and Mr. Bailey, after the fulfillment of the contract, moved to Corvallis. Mr. Opp wrote several letters and mailed payments to Mr. Bailey at Corvallis, but did not inform him what he received from the lessee. Mr. Bailey naturally assumed that he was receiving 15 per cent of the returns to the defendants. In a lawsuit instituted by defendants against the Pacific States

Mines Inc., tried in November, 1935, Mr. Bailey was a witness and a spectator, and, in the course of that suit he discovered that the defendants had been receiving large amounts of money from the lessee, which fact had not been disclosed to him, and that the defendants had not paid him 15 per cent thereof, owing to him; hence this action.

Defendants assign that the court erred in overruling defendants' demurrer to the complaint. It is contended on behalf of defendants that it appears on the face of the complaint that the action is based upon an oral modification of a written contract for the sale of real property, and is within the statute of frauds and void. With this contention we are unable to agree. The contract was made for the purpose of plaintiffs performing work in the mine and furnishing materials as specified in the contract.

The provision, that after the work had been completed the defendants were to use their best efforts to make a sale of said property and pay the plaintiffs 15 per cent of each payment that was made upon the purchase price until the amount of the $10,000 was paid, and that if the mine should not be sold but should be operated, then the first parties would pay to the second parties 15 per cent of the net returns from the operation of the mine until said sum of $10,000, without interest, was paid, is merely a provision for the payment for the work and materials and is simply a yardstick to measure the compensation, besides the $1,500 agreed upon.

The contract provides: "The second parties look entirely to the first parties (the Opps) personally for the payment of said sums respectively, and this provision in this contract is made to define the manner of payment."

■ This is not a contract for the sale of real estate. It was not necessary for the Opps to have a contract to sell their own property. The promise or contract of defendants to pay the plaintiffs a certain per cent of the proceeds of the contemplated sale of the mine, or an interest therein, is not within the statute of frauds: *Strong v. Kamm,* 13 Or. 172 (9 P. 331); 27 C. J. 226, § 215; 25 R. C. L. 540, § 130.

It appears from the complaint, and the testimony tended to show, that the defendants executed the provision relating to the lease of the real property, indicating that the work was completed, and the plaintiffs fully performed their part of the contract.

The defendants contend that plaintiffs abandoned the mine in the fall of 1929 and did not perform the contract. On November 2, 1931, defendant John W. Opp wrote to plaintiff Bailey at Corvallis, saying in part: "I closed a deal on the property a lease which is very satisfactory to me. * * * Will give you full particulars when I see you." On October 2, 1932, John W. Opp wrote to plaintiff Bailey thus: "Received your letter Thursday. I will send you some money next Wednesday or Thursday just how much I cannot say. But it will be monthly that is if the Co. meets their payments which I think they will do." No suggestion was made that the plaintiffs had abandoned their contract. The testimony on the part of plaintiffs is directly in conflict with defendants' claim, and the jury found in favor of the plaintiffs; therefore, we are not concerned with the conflict in the testimony.

All the circumstances indicate that Mrs. Opp, who claims to be the owner of the mine, was employed in Portland at the time of the execution of the written contract, and apparently relied upon her husband to negotiate and have the contract executed by the Baileys.

She left her husband as manager and overseer of the work contracted to be done by the plaintiffs and she was there at the mine several times during the progress of the work. She testified that she was there during 1930 in January, February and 10 days in July. The purpose of the contract with plaintiffs and the performance thereof was unquestionably in order to empower defendants to sell or lease the mine. The defendants were apparently not in condition to finance the undertaking themselves.

Mrs. Opp, who now claims that her husband was not her authorized agent to act in the transaction, obtained the full benefit of the work and materials expended in the mine. The compensation of the plaintiffs depended to quite an extent upon some successful sale or lease of the mine.

■ It was competent for the plaintiffs to establish the agency of John W. Opp for Mrs. Opp by parol. The statute does not require an agreement for performance of work and furnishing materials to be in writing. Circumstantial evidence is ordinarily competent to establish the fact or extent of an agency: 2 C. J. 944, §§ 707, 708.

■■ Mrs. Rose Opp, having adopted the fruits of the contract and received the benefits of the labor of the plaintiffs, cannot now repudiate the authority of her husband as manager and agent for her in the mine. She cannot leave an agent for about a year and a half to transact her business, and supervise the labor that was being performed, and take advantage of that part of his agreement which is favorable to her, and repudiate the remainder: *Snodgrass v. Wallowa Milling & Grain Co.*, 111 Or. 402 (227 P. 294); *Grover v. Hawthorne Estate*, 62 Or. 77 (114 P. 472, 121 P. 808); *Hillyard v. Hewitt*, 61 Or. 58 (120 P. 750); *McLeod v.*

*Despain*, 49 Or. 536 (90 P. 492, 92 P. 1088, 19 L. R. A. (N. S.) 276, 124 Am. St. Rep. 1066).

■ There being testimony to show that John W. Opp was the agent of his wife, it became a question for the jury to say whether Mr. Opp was such agent: *Cranston v. West Coast Life Ins. Co.*, 72 Or. 116 (142 P. 762); *Baker v. Seaweard*, 63 Or. 350 (127 P. 961).

We do not question the authorities cited thus far by the learned counsel for defendants, but we do not think that they apply to the facts in this case.

Mrs. Opp, in order to avail herself of the fruits of plaintiffs' labor and the contract of modification on her behalf by her husband, which she signed as far as written, joined with Mr. Opp in the execution of the lease to one John Price, which was declared by Mr. Opp to be a satisfactory lease and which was the means of defendants obtaining considerable money. The jury was warranted in finding that the performance of the contract by plaintiffs, and the modification itself, was confirmed, ratified and approved by each of the defendants, and that there was a full performance of the contract on the part of plaintiffs. The defendants admit that they made the payments set forth in the plaintiffs' complaint, between October 19, 1932, and March 16, 1936, but deny that they were made in pursuance of the contract. However, the testimony on the part of plaintiffs is to the effect that these payments were made in pursuance of the contract and the verdict of the jury forecloses any argument to the contrary.

The written contract, which provided that the work was to be done at any place designated by the Opps, contemplated that changes would be made in the plan of the work as shown by the written contract. For this reason, and leaving out of consideration for the time that Mrs. Opp ratified and affirmed the contract

as modified, she is not in a very strong position to claim that Mr. Opp was not authorized to make such change. The court did not err in overruling the demurrer to plaintiffs' complaint.

Assignment of error No. 2 is that the court erred in overruling the motion for a nonsuit as to the defendant Rose Opp. Assignment of error No. 3 is that the court erred in denying the motion of defendant Rose Opp for a directed verdict in her favor, and assignment of error No. 4 is that the court erred in denying the motion of each of the defendants for a directed verdict in their favor. These assignments of error raise practically the same question, a portion of which has already been adverted to.

In support of assignment No. 2, in addition to referring to the statute, defendants cite the case of *Bessler v. Derby*, 80 Or. 513, 519 (157 P. 791). We take from that opinion the following:

"The principal did not expressly or impliedly ratify the unauthorized agreement, but, on the contrary, when notified of the transaction, the president immediately disavowed the unauthorized act of the agent and Stenoff was promptly informed of such disavowal."

This shows that the facts in *Bessler v. Derby* were entirely different from those in the case at bar.

■ Defendants place some reliance upon the claim that Mrs. Opp owned the mine. We deem it immaterial, for the purpose of this case, which defendant held the legal title to the mine. The trial court charged the jury that the contract recites "that the parties of the first part, that is, Mr. and Mrs. Opp, are the lawful owners of this 360 acres of mining ground, and that, of course, for the purpose of this lawsuit is binding upon all parties to the contract." No exception was reserved to

this part of the charge, and the same is considered correct.

■ The resurrection of this dormant mine was quite an event, and, under the facts and circumstances of the case as disclosed by the evidence, the jury was warranted in believing that Mrs. Opp had full knowledge of all the transactions pertaining to the work and the rejuvenation of the mine, and joined with her husband in executing the written contract and authorized all that he did in managing and carrying out the contract, as modified. At no time did Mrs. Opp make any objections to the proceedings, until payment for the performance of the work was demanded. Mrs. Opp joined with J. W. Opp in leasing the mine on October 22, 1931. She knowingly availed herself of the benefits of the labor and materials expended by the plaintiffs and of the acts and arrangements made by Mr. Opp in regard to the proceedings, which resulted in a successful termination.

It is stated in 1 Mechem on Agency, 316, § 435:

"One, therefore, who voluntarily accepts the whole or any part of the proceeds of an act done by one assuming, though without authority, to be his agent, must ordinarily be deemed to ratify the act and take it as his own with all its burden as well as all its benefits. He may not ordinarily take the benefits and reject the burdens, but must either accept them or reject them as a whole."

Defendants by their answer admit "that the purpose of the said contract * * * was to develop the mine to such condition so that same might be sold or leased."

The testimony abundantly supported the allegations of the complaint and there was no error in overruling the motions for a nonsuit and a directed verdict in favor of either defendant.

 Defendants predicate error upon the refusal of the court to give defendants' requested instruction No. 3, which is as follows:

"You are instructed that should you find from a consideration of all the evidence in this case the plaintiffs have not proved to your satisfaction by a preponderance of the evidence, that there was a modification of the contract as claimed and alleged by plaintiffs, then your verdict should be returned in favor of the defendants."

The learned trial judge, in his charge to the jury, carefully detailed and explained the issues made by the pleadings and the contract, as alleged in the complaint, and instructed the jury that the burden is on the plaintiffs to establish the allegations of this complaint by a preponderance of the evidence, and that a preponderance of the evidence meant, in effect, "satisfying evidence", evidence that satisfies the jury of the existence or nonexistence or the truth or falsity of any disputed point, and if that is done, the plaintiffs are entitled to recover the amounts according to the contract, and if they have failed so to do, then they are not entitled to recover.

The court instructed the jury that "the particular issue to which I call your attention by this complaint is that there was an oral modification of the written contract, and you will have to determine whether there was such an oral modification, because that is denied by the defendants."

The court's instruction was in consonance with the rule referred to by counsel for defendants. In *Boyes v. Ramsden*, 34 Or. 253 (55 P. 538), it is said: "the evidence of an intention to modify the prior agreement must be clear and satisfactory". It goes without saying that it is not essential for a trial court to instruct the jury in

the exact language of the requested instruction. The court did not use the word "clear" but did use the word "satisfactory" in informing the jury of the proof required.

It seems to us that the general instructions given by the court, which were quite lengthy and very plain, covered the defendants' requested instruction No. 3.

It cannot be questioned but what the court charged the jury that the plaintiffs were required to prove the modification of the written contract, as alleged by the plaintiffs. Moreover, the requested instruction seems to ignore the fact that the plaintiffs were employed to perform certain work and to furnish certain materials in the mine, and the record shows that the oral arrangement and agreement made by John W. Opp with the plaintiffs was performed, and, as we have already noted, was ratified and affirmed by Mrs. Opp.

Defendants, by the requested instructions No. 2 and No. 4, in substance asked that the jury be charged if they found from the evidence that there was no change or modification of the contract, as originally entered into by the plaintiffs and defendants, then they should find a verdict in favor of defendants, and further that the defendants were not indebted to the plaintiffs for the reason that plaintiffs failed to complete the work and abandoned the job.

What has been said in regard to requested instruction No. 3 is largely applicable to requested instructions No. 2 and No. 4. The trial court prefaced the right of the plaintiffs to claim anything due by the provision that the contract had not been abandoned, and if the Baileys had abandoned the contract the money would not have been payable.

Again in instruction No. 42, the court said in regard to the 15 per cent:

"I think I have told you this was not to become operative until and unless the work under the contract was all performed, and, of course, as to that, the plaintiff would not be entitled to recover the 15% of those payments unless he had performed the contract, * * *."

The court charged the jury by instruction No. 20 that the defendants specifically denied that there was any oral modification of the written contract as alleged, and stated, "In other words, they deny that oral modification of the written contract and throw the burden of proof on the plaintiffs thereupon to establish that oral modification by a preponderance of evidence."

The court, after reading the pleadings and detailing the issues to the jury and informing them what was denied or what the issues were, charged the jury as follows:

"Now the question for the jury to determine is going to be which side has produced a preponderance of the evidence, or how does the evidence, all of the evidence in the case preponderate. When you come to consider all the evidence in the case, does it preponderate in favor of the plaintiffs' contention here or does it preponderate in favor of the defendants' contention. If it preponderates in favor of the plaintiffs' contention, then the plaintiffs are entitled to recover what they are demanding here. If it preponderates in favor of the defendants' contention, then the defendants are entitled to recover the relief which they are demanding."

The cause was fairly tried and submitted to the jury by the charge of the court. The jury could not have found in favor of the plaintiffs unless it found that the testimony supported the allegations of plaintiffs' complaint, that the written contract which was admitted was modified as alleged, that plaintiff performed the

contract to the satisfaction of the defendants, and that the contract was not abandoned as claimed by the defendants.

The court called attention to the denials and allegations of new matter in defendants' answer and clearly presented the theory and claim of defendants to the jury.

Finding no error in the record, the judgment of the circuit court should be affirmed. It is so ordered.

BAILEY, RAND and LUSK, JJ., concur.

---

Petition for rehearing denied June 14, 1938

ON PETITION FOR REHEARING
(80 P. (2d) 40)

BEAN, C. J. The defendants have filed a petition for rehearing and urge that there was error in the trial court in submitting the question of abandonment of the work involved in the action as stated in our former memorandum.

The defendants claimed that plaintiffs had failed to complete the work as provided in the contract of June 24, 1929, and abandoned the job and requested the court to instruct the jury in substance that if the jury found, from the consideration of all the evidence, the plaintiff did abandon the work through no fault of defendants, they should render a verdict in favor of defendants.

A careful reading of all the charge of the court to the jury convinces us that this question was fairly submitted to the jury. It may be remembered that the contract provided that Opp should pay Bailey $1,500 on October 1, 1929, but instruction No. 35 informed the

jury on this point that the sum was payable at that date, regardless of whether the work had been completed or not, provided the contract had not been abandoned by the Baileys. "If they had abandoned the contract at that time, * * * the money would not have been payable under those conditions." There is, however, in the place we have indicated by the stars, the words "of course, that is another matter which is not involved in this case". The meaning of these words is not as clear as though the word "not" had been omitted. Nevertheless, when we take all of the instructions we think the question was fairly submitted to the jury.

The trial court referred to the allegations of the pleadings, particularly that Mr. Bailey and his wife agreed, in writing, to perform certain development work on the property, the Opp mine, that subsequent to the execution of the contract the parties orally modified the written contract by mutual agreement, that the plaintiffs alleged that they duly and fully performed all the conditions of the contract as modified by the mutual agreement, and quoted the conditions in regard to the payment.

That the defendants, by their answer, did not deny the payment of the $100 by plaintiffs, which is claimed Bailey paid in the course of the modification of the contract, but defendants "specifically deny that there was any oral modification of the contract", that defendants further alleged that "the plaintiffs notified the defendants that they were financially unable to complete the contract and would be forced to abandon the same, and thereupon the plaintiffs offered to pay, and did pay to John Opp, one of the defendants, the sum of $100 for the purpose of having the said Opp endeavor to secure some other party to take over and

complete the said contract; that the said Opp made every reasonable effort to interest parties in taking over and completing the said agreement for the plaintiffs, but was unable to do so. That defendants alleged that plaintiffs utterly failed to carry out and perform the terms of the agreement by them and "that on or about the latter part of the year 1929 the plaintiffs wholly and completely abandoned the contract and the said mining property, and ceased all operations thereof, and have never resumed any of the said operations and thereupon the contract ceased and terminated" and called attention to plaintiffs' reply which was simply a denial of the new matter in the answer.

The court called the attention of the jury, in detail, to the issues contained in the pleadings, and explaining the written contract, and that plaintiffs alleged "that at some stage of these proceedings and while they were in progress that Opp, being in a hurry to get a deal with a prospective buyer or lessee, proposed to him (Bailey) that he would waive the additional or the completion of the work in tunnel No. 2 as the written contract had provided that he would waive all the balance of that work, if the plaintiffs would pay him $100 and complete the mucking out of the No. 11 tunnel, and the opening through of the cave-in in that tunnel, and timber, so that part of the mine could be investigated and gotten into;" that thereupon he went ahead with the completion of the work in tunnel No. 11, that is the opening through the slides and cave-in during the year 1929 and through the year 1930 and claims to have performed the contract according to the written contract as orally modified.

The court charged the jury that the defendants on their behalf claimed that there was no oral modification of the contract at all; that not long after the Baileys

had entered into the written contract it developed that they were unable to carry out the contract and so advised defendants; the Opps claimed by their testimony that the $100 was paid about October, 1929, or thereabouts, and that the notice of abandonment by Mr. Bailey, the actual abandonment on the part of Bailey, occurred about October, 1929.

The court then charged to the jury that the question for the jury to decide is which side has produced a preponderance of the evidence. "If it preponderates in favor of the plaintiffs' contention then the plaintiffs are entitled to recover what they are demanding here. If it preponderates in favor of the defendants' contention, then the defendants are entitled to recover the relief which they are demanding."

It will be seen that the defendants plainly alleged and testified that the plaintiffs abandoned the written contract and failed to perform the same. The plaintiffs plainly alleged and testified that they fully performed the written contract as modified by the mutual agreement. It seems impossible for the jury to have misunderstood this question, notwithstanding whatever we might think in regard to the word "not" or the words "not involved" to which we have referred. We think the requested instruction in substance was given to the jury in different language than proposed by the defendants, and that the issue was plainly and fairly submitted to the jury.

█ We agree with counsel for defendant, the court should instruct the jury on the law applicable to all theories of the case that are supported by competent evidence.

█ In other words, the jury were instructed by the court that if the written contract was modified as stated

by Bailey, and Bailey performed the contract as modified, he was entitled to recover; and if as claimed by Opp that there was no modification of the contract and that Bailey abandoned the contract and did not perform the work as agreed, the plaintiff could not recover the money.

There is considerable argument in the brief in regard to the time that the change was made and the work was abandoned in tunnel No. 2.

Bailey testified in part as follows:

"Q. After the completion of this 106 feet, what, if anything, was said with reference to additional work in No. 2 (tunnel), was any current work done or was the work suspended?

A. The work was suspended by Mr. Opp's request.

Q. About when was that?

A. That was sometime in October, if I can recall right.

Q. Of what year?

A. Of 1929."

Mr. Opp testified in substance, that one day he was working in No. 2, he (Bailey) said "Mr. Opp, I couldn't get the money from Mr. Gore, and" he says "the bank is going to shut down.

Q. Well go on and tell what happened.

A. Well, we talked things over back and forth and what to do and one thing or other, and he couldn't go ahead with it, he had to quit. That was that part, and then he said to me—I broached that too—I will put it the other way. I said: 'I believe, Mr. Bailey, I might be able to help you out'. I knew a party in Portland and he might be able to take up this contract with me; if he would put up $100.00 I would go and do it.

Q. Go on and tell what you did.

A. He give me $100.00 and I went to Portland and couldn't do anything with the party at all, so the thing

blew up; that was as far as it went.

Q. Go on and tell what happened after that.

A. Well, there was nothing done there at all. Mr. Bailey stayed on about a month there, as I remember, and it looked like we could get through No. 2. There was a little opening by that time. I said I would like—

Q. You mean—?

A. No. 11 now. He was alone, he was all alone; it took him a little longer than he figured on, but he got through there along about the first of September. That is my recollection.

Q. Then what did he do?

A. Well, he moved to Medford. Well, that is about all, as I know, that happened after that.''

There appears to be no attempt upon the part of either Bailey or Opp to fix the date exactly when the change in the plan of the work was made. Neither do we see that it is very material.

There was a sharp conflict in the testimony and the case was determined by the jury, and we think fairly submitted to that tribunal.

After re-examining the case carefully, we find no reversible error in the record.

The petition for rehearing is denied.