Argued March 18; reversed May 27, 1947 ON THE MERITS (181 P.2d 133)
Rosa Richter died February 19, 1943, testate. She left three heirs, Ruth Richter, claimant, a daughter; Morris A. Richter, a son, who will be referred to herein as the executor; and Sarah Ritchie, a daughter, who is the objector.
During the process of administration, claimant filed with the executor her claim against the estate in which she asserts the estate is indebted to her in the sum of $1639.53. It is claimed that this indebtedness is due from said estate to claimant by virtue of certain taxes paid, and certain improvements made with reference to the west thirty feet of Lot 18, Block 21, King's Second Addition to the City of Portland, Multnomah County, Oregon. The claim consists of taxes advanced in the sum of $995.42, interest upon these advances amounting to $344.11, and repairs on the house, $300. The claim was allowed by the executor, and the objector made objections to the final account of the executor, raising the question as to the validity of the claim, as well as some other matters which are not involved in this appeal.
The lower court heard the evidence and sustained the objections to the final account with reference to this claim thereby disallowing the claim. The trial judge filed a written opinion giving as his reason for disallowing the claim that "The testimony seeking to establish the existence of an express contract is clearly *Page 365 
insufficient, depending exclusively upon the evidence of the one party thereto, with no corroboration other than an unsatisfactory and very hazy implication to be drawn from the executor's testimony that some such understanding might have been intended by the claimant and her mother, the decedent."
As was stated by this court in In re Swank's Estate,163 Or. 367, 371, 97 P.2d 723:
 "On appeal from an order allowing or rejecting a claim against a decedent's estate the supreme court does not try the case de novo as in equity proceedings. The hearing upon such a claim is in the nature of an action at law: In re Stout's Estate, 151 Or. 411, 417, 50 P.2d 768, 101 A.L.R. 672, and Oregon cases there cited. And, hence, when the case is brought here and the correctness of the trial court's decision is questioned, our sole function is to determine whether or not there is any competent, substantial evidence in the record supporting the findings of the court below. See Franklin v. Northrup, 107 Or. 537, 551, 215 P. 494; Bannon v. Thompson, 136 Or. 311, 313, 298 P. 907."
In this case the court made no findings of fact. The order denying the claim, however, would have the effect of a general finding. In re Stout's Estate, 151 Or. 411, 418,50 P.2d 768, 101 A.L.R. 672.
We have examined the record carefully. We have read a second time all of the testimony offered by objector. This evidence, however, not only fails to contradict the showing made by claimant but in a measure, as we shall hereafter point out, sustains claimant's position. There being no conflict in the evidence on this issue, this court is not bound by the general finding of the trial court. Wakefield, Fries Co. v.Sherman-Clay Co., 141 Or. 270, 279, 17 P.2d 319; StateSavings and Loan Association v. Bryant, *Page 366 159 Or. 601, 626, 81 P.2d 116; In re Steele's Estate,152 Or. 49, 62, 52 P.2d 207. Where the evidence is undisputed, its legal effect presents a question of law. 5 C.J.S. 607, § 1647b; 4 C.J. 856; Clarke-Woodward Drug Co. v. Hot Lake Sanatorium Co.,75 Or. 234, 240, 146 P. 135; Squires v. Modern Brotherhood,68 Or. 336, 347, 135 P. 774, 778; Coffin v. Hutchinson, 22 Or. 554,557, 30 P. 424.
Notwithstanding the fact that the claim was allowed by the executor, the burden of proof is still upon claimant. In reFirst Farmers National Bank of Luverne, Minn., 145 Or. 150,160, 26 P.2d 1103; Re Chambers' Estate, 38 Or. 131, 134,62 P. 1013. We shall, therefore, give consideration to the evidence.
The evidence shows that the decedent had made a loan on the property in question to one Barney Finkelstein for $3000, that in 1936 the interest was delinquent on this loan, and the taxes were also delinquent, running back as far as and including 1930. Judge Julius Cohn, acting as attorney for decedent, obtained a deed from the mortgagors to the decedent, subject to the delinquent taxes, and in consideration of which the decedent cancelled the indebtedness of the mortgagors. At that time the property was in a very bad state of repair. Decedent did not have the money to pay the delinquent taxes or to repair or improve the house.
Claimant was teaching in the Portland schools and was living with her mother at the time. She entered into a contract with her mother to the effect that she would pay these delinquent taxes and make the repairs on the house; that the property should be sold; and that her mother, the decedent, was to receive the first $3000, the amount of the mortgage. Anything realized over and above that amount was to be paid to claimant in consideration of the payment of the repairs and *Page 367 
delinquent taxes. The agreement was that claimant should pay the current taxes and one fourth of the earliest delinquent taxes each time. Apparently they were proceeding under chapter 5, Oregon Laws Special Session 1935.
Claimant testified clearly and unequivocally as to the making of this agreement. She is corroborated by the tax receipts which are in evidence, many of which are made out in her name. She is corroborated by the man who made the repairs on the house who testified that he contracted with her for the repairs and that he was paid by her for making them. She is corroborated by her brother, the executor, who knew of the arrangement. She is corroborated by Judge Julius Cohn who handled the matter for the decedent and who knew about the agreement at the time.
Judge Cohn testified: "It was my understanding that Ruth was to pay for the taxes and repairs, for Mrs. Rosa Richter, the mother, did not have the money; she was depending on getting this $3000 from this mortgage owner."
Again: "Ruth was to get all over and above what was owing on the mortgage, which they estimated at a certain figure at that time; but Mrs. Richter was to get the mortgage indebtedness out of the property first, and then Sarah's advances were to be paid afterwards. Q. When you say `Sarah,' you mean `Ruth'? A. Ruth. * * *"
Again (referring to a deed that was executed but not delivered): "It was not delivered because of the understanding given when the property was sold, that Ruth was to get the moneys over and above the $3000 mortgage debt."
Judge Cohn was carefully cross-examined, and, at the conclusion of the cross-examination, counsel for *Page 368 
objector said to him: "You are a very good witness, Judge Cohn." The remark of counsel for respondent was appropriate. Judge Cohn was a good witness. He handled this deal for the decedent. He knew about this transaction and testified to it unequivocally, without trying to argue the case for or on behalf of anyone. He was the kind of a witness that produces conviction.
The trial court was clearly in error when it held that the only corroboration of the claimant's testimony was that of the executor. The trial court had apparently forgotten this most important evidence in the case which came from Judge Cohn. The trial court must have overlooked the testimony of the man who made the repairs, as well as the tax receipts.
In addition to the foregoing, objector called Miss Faye Jacobs, who gave the following testimony:
"Q (By Mr. Lenske) Do you remember telling me that Mrs. Richter complained at that time that Ruth was not paying any board or room?
"A She told me Ruth was paying the taxes.
"Q But that Ruth said she was paying the taxes instead?
"A Well, that's all: Mrs. Richter did say that Ruth was paying the taxes on the house."
The contention is made by counsel for respondent that claimant is indebted to the estate for board, that when she started making these improvements and payments for taxes she quit paying board. The record does not sustain this contention. The testimony shows that claimant lived with her mother over a long period of time, that she never paid board. She helped with the household expenses and helped to do the work. At one time she thought she gave her mother as much as $50 a month toward household expenses in addition *Page 369 
to paying some of the bills. At another time she thought she might have averaged $30 a month, not as board, as she explained over and over again, but to help pay household expenses. In addition to this she continued to pay bills. Her brother, the executor, came home to live. While he did not contribute as much toward household expenses as claimant, the matter of his staying there was handled on the same basis.
As a matter of fact, objector herself gave the following testimony with reference to this matter:
"Q Mrs. Ritchie, I will ask you one question: do you know whether or not there was ever an agreement whereby your mother was to charge Ruth or Morris so much money a month for board and room?
"A Well, she always said that they should give her money; there was no specific —
"Q No specific amount?
"A No specific amount that they should give her, but she said that they never gave her anything.
"Q But isn't it a fact that your mother ran her home?
"A Yes.
"Q And it was just one family, as far as living in that house is concerned?
"A Well, I guess it was.
"Q And isn't it a fact that your mother didn't put this on a business basis?
"A No.
"Q She didn't run a boarding house?
"A No.
"Q And isn't it a fact that Morris would bring certain things home in the line of groceries and so on? *Page 370 
"A Yes.
"Q And that Morris would pay the light bills or
"A Yes.
"Q And that Ruth would bring groceries home? whatever the bills were?
"A That's it, yes, those little ones."
Again, it is contended that there is a presumption that the advances were gratuitous because of the relationship between the parties — mother and daughter living in the same household. It should be remembered (1) that the advances were not made toward the upkeep of or taxes on the property constituting their home, but upon another piece of property entirely, in another part of the city, and that by these advances the decedent was enabled to receive rentals therefrom amounting to from $33 to $37 per month; (2) that the positive evidence of claimant, her brother and Judge Cohn clearly shows that the advances were made with the expectation that repayment would be made when the property was sold. This would overcome any presumption of a gratuity. In re Herdman's Estate, 167 Or. 527, 532,119 P.2d 277; Franklin v. Northrup, 107 Or. 537, 215 P. 494; Sargent v.Foland, 104 Or. 296, 207 P. 349; Stahn v. Stahn, 192 Minn. 278, 256 N.W. 137; Jennings v. Rohde, 99 Minn. 335,109 N.W. 597; Oliva v. Fernandez, 68 F.2d 338, 342. Evidence of an oral contract which is violative of the statute of frauds is not admissible for the purpose of enforcing the contract, but such parol evidence of such a contract may be received for other purposes. Hiller v. Smith, 171 Or. 428, 437, 137 P.2d 828;McGilchrist v. F.W. Woolworth Co., 138 Or. 679, 685,7 P.2d 982; Keller *Page 371 v. Bley, 15 Or. 429, 15 P. 705; note in 49 A.L.R. 1121. We hold that claimant sustained the burden of proof.
Again, objector makes the contention that the claim is barred by the statute of limitations. This contention cannot be sustained. The record shows that the obligation upon the part of the claimant was a continuing one and that she continued to perform by virtue thereof until the death of her mother. The statute would not commence to run until that time. In reMcKinney's Estate, 175 Or. 1, 5, 149 P.2d 976; Brennen v.Derby, 124 Or. 574, 583, 265 P. 425; Branch v. Lambert,103 Or. 423, 437, 205 P. 995. The claim was not barred.
Some question has been raised about the right of claimant to maintain this character of a claim in view of the fact that the property has not been sold, and in view of the further fact that claimant was to have only what the property brought over and above $3000. All parties to this litigation concede that this agreement was violative of the statute of frauds.
Notwithstanding this state of the record, we have deemed it necessary to give consideration to that question. We have requested both sides to submit additional briefs. We have examined the authorities submitted, and, in addition thereto, have waded through a maze of cases discussing this question. The authorities are not in harmony. The weight of authority, as well as the better reasoned cases, holds that, where such a contract has been executed by the sale of the land, the statute of frauds no longer applies. Note 154 A.L.R. 388. Where, however, the agreement remains unexecuted the statute does apply.
49 Am. Jur. 502, § 165, after discussing the general rule holding in substance and effect that a contract *Page 372 
relating to the disposition of the proceeds of land, in case of its sale, is not one for an interest in land within the statute of frauds, then says:
 "Where, for example, one conveys land to another under a verbal agreement that he will sell it and pay the proceeds over to the grantor, the grantor may, after a resale has been made, compel the grantee to account for the proceeds, although he could not have enforced the grantee's oral agreement to resell."
(Italics supplied.)
27 C.J. 226, § 215, likewise dealing with this subject and after stating the general rule, in substance the same as stated in 49 Am. Jur., supra, then uses this language:
 "Where, however, the agreement to sell or resell rests in parol and remains unexecuted, it cannot be enforced and the agreement as to payment out of the proceeds falls with it."
To the same effect, see 37 C.J.S. 618, § 124.
In the case of Walters v. Walters, 172 N.C. 328, 90 S.E. 304, land was conveyed by plaintiff to defendant. The plaintiff claimed an oral trust whereby part of the proceeds should be delivered to him at the time of sale. The court said:
 "The grantor cannot set up a parol trust in his own favor against the grantee. Nor, treating this action as one to recover a part of the purchase money should the land be thereafter sold, can the plaintiff recover. In this aspect the case would be very similar to Sprague v. Bond, 108 N.C. 382, 13 S.E. 143, where Shepherd, J., says:
 "`The plaintiff could not have compelled the defendant to execute her agreement to sell the land, as there was no enforcible trust, and the agreement was within the statute of frauds.' *Page 373 
 "In Brown v. Hobbs, 147 N.C. 75, 60 S.E. 717, it is said:
 "`In this case the defendant did not agree to convey any part of the land to the plaintiff, but to sell and convey it to some other person, and pay plaintiff his share of the net proceeds in money. The first part of this promise, namely, the promise of defendant to sell the land, was within the statute, and if he had refused to sell, the plaintiff could not have maintained an action to enforce the promise.'
 "To the same effect, Bourne v. Sherrill, 143 N.C. 381, 55 S.E. 799, 118 Am. St. Rep. 809."
See also Collins v. Tillou's Administrator, 26 Conn. 368, 68 Am. Dec. 398; Cromwell v. Norton, 193 Mass. 291, 118 Am. St. Rep. 499, 79 N.E. 433; Rapley v. McKinney's Estate, 143 Mich. 508, 107 N.W. 101; Collar v. Collar, 86 Mich. 507, 513,49 N.W. 551, 13 L.R.A. 621, 624; Bork v. Martin, 132 N.Y. 280,30 N.E. 584, 28 Am. St. Rep. 570; Logan v. Brown, 20 Okla. 334,95 P. 441, 20 L.R.A., (N.S.) 298.
We therefore hold that the agreement between the parties involved herein upon which this claim is based, while it remained unexecuted, was unenforceable because of the statute of frauds.
This conclusion is not out of harmony with the effect ofBailey v. Opp, 159 Or. 301, 77 P.2d 826, 80 P.2d 40, orStrong v. Kamm, 13 Or. 172, 177, 9 P. 331. In Bailey v. Opp, supra, plaintiff brought an action against the defendant to recover for profits made in the operation of a mine. The contract which provided the plaintiff should receive a portion of such profits, as well as $10,000 of the sale price in case the mine was sold, was in writing. It was orally modified in several respects as to the character of the work to be performed by the plaintiff which would entitle him to these profits *Page 374 
and this portion of the sale price when the mine was sold. While this court said, "the promise or contract of defendants to pay the plaintiffs a certain per cent of the proceeds of the contemplated sale of the mine, or an interest therein, is not within the statute of frauds," the statement was unnecessary for the decision of the case. The action did not involve a portion of the proceeds growing out of the sale but only profits that had actually been obtained in the operation of the mine. The court cites Strong v. Kamm, supra. But in that case the contract was executed. The property had been sold.
Payment of these taxes and the improvement of this property were clearly benefits to the estate. In fact the record justifies the conclusion that, had it not been for this agreement and claimant's payments thereunder, decedent would have lost this property entirely. In addition to this, the record shows that at the time of the trial (September 1945) the property was worth from $5000 to $6000. Therefore, under these circumstances, an action would lie to recover the money expended for these improvements and these taxes in indebitatus assumpsit. Hiller v.Smith, supra at 435, 436; McGilchrist v. F.W. Woolworth Co., supra at 686; Richter v. Derby, 135 Or. 400, 407, 295 P. 457;Brennen v. Derby, supra; Bull v. Payne, 47 Or. 580, 584,84 P. 697; 4 Am. Jur., Assumpsit § 27.
One other question. The claim contains an item of $344.11 as interest on taxes advanced. The record shows that this interest was computed from the time of payment to June 1, 1945. Under the statute, § 66-101, O.C.L.A., interest is payable "On all moneys after the same becomes due * * *." When did these moneys become due? If we answer this question from the standpoint of the contract made between appellant *Page 375 
and her mother, these moneys would not be due until the property was sold. The property has not been sold. If we consider the question from the standpoint of claimant's present theory, the moneys did not become due until claimant elected to pursue that remedy. This election, as shown by this record, is the date of the filing of this claim with the executor, June 26, 1945. The claim would not commence to draw interest until that date.
We can see no object in remanding this case for retrial. The record is complete. Under authority of section 3, article VII, Oregon Constitution, as construed in In re Berger'sEstate, 144 Or. 631, 654, 25 P.2d 138, the claim is allowed in the sum of $1295.42, together with interest thereon at the rate of six per cent per annum from June 26, 1945, until paid. The judgment of the trial court is reversed and the cause remanded with directions to enter judgment in accordance with this opinion.